

FILED

APR 1 0 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

Paul Emmanuel Poutcheu Yossa
3903 Ripley Street
Sacramento, CA, 95838
916-220-0712

Plaintiff in Pro Se
Paul Emmanuel Poutcheu Yossa

## UNITED STATES DISTRICT COURT

## EASTERN DISCTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| Paul Emmanuel Poutcheu Yossa | ) Case No: CIV. S-12-0023 MCE GGH PS |
| Plaintiff, | ) |
| vs. | ) **PLAINTIFF'S OBJECTIONS TO** |
| | ) **FINDINGS AND** |
| Countrywide Home Loans, Inc. | ) **RECOMMENDATIONS** |
| Bank of America, N.A | ) |
| Recontrust Company, N.A. | ) Magistrate Judge: Gregory G. Hollows |
| Mortgage Electronic Registration | ) |
| Systems, Inc. | ) |
| DOES 1- 100 | ) |
| Defendants | ) |

## 1.0   INTRODUCTION

Plaintiff   Paul Emmanuel Poutcheu Yossa ("Yossa") hereby timely objects to
Magistrate Hollows March 6th, 2012, Findings and Recommendations ("FR") wherein,
he recommends to the court to that the Complaint be dismissed with leave to file an
Amended Complaint and that the FDCPA cause of action be dismissed without leave
to Amend.

The court may reject he "FR" for the following compelling reasons:

1.     Yossa's FDCPA cause of action is central to his complaint and one of the federal causes of action that is not time barred and applies to Defendants.

2.     The "FR" ignores the record of Defendant Countrywide as a leader in Predatory Lending practices, further, the "FR" ignores multitude of lawsuit filed against Countrywide by Attorney Generals of various States which Countrywide has settled before going to trial and agreed to pay heavy monetary penalties, including suits against minority African Americans and Hispanics being deliberately and maliciously targeted for higher interest rate Predatory loans.

3.     The "FR" ignores Yossa's minority status in evaluating the conduct of a reasonable person. The reasonableness of Yossa's conduct is evaluated in light of the conduct of the non-minority person, thus he is not placed in equal footing and denied equal protection under the law. In regard, when there is a conflict between two federal statutes, a federal court must choose the one that protects the interest of the weaker party, in this case, Plaintiff, Yossa.

4.     Statute of limitations period was not expired at the time Yossa filed his Complaint because injury did (a) Plaintiff and Defendants entered into a loan modification agreement on or about December 2008, which effectively started a new limitation period. (b) The injury did not arise until after the of Notice of Trustee Sale. ("NOTS") alerting Plaintiff to the negative amortization of his loan. Without injury, Yossa could not properly state a cause of action against Defendants.

5.     Yossa could not reasonably determine the terms of the agreement actually stated because of ambiguities and obscurities within the actual agreement, Yossa is not a federal judge, accountant or and experienced banker, Yossa is a first time unsophisticated home buyer placing his trust on Defendants representation and at the time had no reason to suspect them of willful fraud, deceit, misrepresentation and Predatory lending practices against unsuspecting minorities such as himself. See Taylor v. Accredited Home Lenders, Inc. As such any ambiguous provisions in the agreement must be imputed against the drafters of the contract, the Defendants.

6.    Though Yossa's Complaint allegedly raised claims based on conduct that occurred in part outside the limitations period, provided some claims that occurred within the statutory period, the Defendants may be liable for the entire course of the conduct, including acts predating the statutory period, under the continuing violation doctrine.

7.    The doctrine of Equitable tolling, California discovery rule and Continuing violation doctrine is applicable to Yossa's causes of actions, and can be used to toll all limitation periods.

In the alternative rather than dismissing Yossa's FDCPA claim in the instant action, this Court in the interest of justice and fairness to Plaintiff against a known Predatory Lender provide Yossa opportunity to plead FDCPA cause of action in the Amended Complaint, Plaintiff will show with *prima facia* evidence and Defendants self-admittance in all collection and foreclosure document referenced as Exhibits in the Amended Complaint that Defendants are subject to FDCPA and are debt collectors, as provided in the Act.

## 2.0    TILA

Plaintiff has pleaded with the requisite specificity for a claim for violation of Truth in Lending Act ("TILA") 15 U.S.C. § 1601 et seq. Plaintiff alleges that Defendants failed to provide Plaintiff with the proper disclosure, ["C"]. Plaintiff alleges the LOAN and related contracts contain conflicting terms and interest rates that are not reasonably comprehensible by consumers, TILA and other Acts/Statutes dose not mandate that to protect the consumer, his loan documents have to be reviewed and approved by his attorney, before he signs, in case the terms and conditions are not favorable to him, and the required disclosures mandated by TILA are not missing or misrepresented. Defendants present a take it of leave it contracts and documents to the Plaintiff and the Plaintiff was at the mercy of the lender to comply with the law and act in a just and proper manner, as not to cause any injury to the him, The reverse of this is true, in widespread fraudulent and predatory lending practices over the last decade, by lender. Plaintiff further alleged that he detrimentally relied on the misrepresentation of Defendants because Plaintiff reasonably believed that Defendants were licensed professionals. Plaintiff claims that the resulting LOAN was at a higher interest rate

than what was represented; the actual payments were higher than payments as represented to and agreed upon by Plaintiff, the actual undisclosed interest rate resulted in secret amounts being added to his principal balance every month and causing his loan balance to increase through negative amortization, eventually making the LOAN unaffordable to Plaintiff, Plaintiff was accordingly put into a mortgage all without his informed consent.

> TILA is a consumer protection statutes that seek to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The statutes is designed "to protect consumers" choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. California*, 784 F. 2d 910, 915 (9ᵗʰ Cir. 1986). See also *Semar v. Platte Valley Fed, Sav, & Loans Ass'n*, 791 F.2d 669,705 (9ᵗʰ Cir. 1986). ("Congress designed [TILA] to apply to all consumers, who are inherently at disadvantage in loan and credit transactions."). Because the statutes is remedial in nature, its is to be applied broadly in favor of the consumer. *Jackson v. Grant*, 890 F.2d 118, 120 (9ᵗʰ Cir. 1989); See also *Plascencia v. Lending 1ˢᵗ Mortgage*, No C. 07-4485 CW, 2008 WL 1902698, *3 (N.D. Cal. Apr.28, 2008)("TILA has been liberally construed in the Ninth Circuit.") (Intentional quotation and citation ömitted). Thus even "[t]echnical or minor violations" of TILA or its implementing regulations may impose liability on the creditor. *Semar*, 791 F.2d at 704 (noting also '[t]o insure that the consumer is protected...[TILA and its implementing regulations must] be absolutely complied with and strictly enforced").

*Amparan v. Plaza Home Mort., Inc* No. C 07-4498 JF (RS). --f. Supp.2d--, 2008 WL 5245497, AT *3, (N.D.Cal., Dec 17, 2008). TILA requires that borrower are provided with appropriate disclosure to inform and protect consumer. See *Amparan v. Plaza Home Mort., Inc.*, supra at *3; *Pacific Shore Funding v. Lozo*, 138 Cal. App. 4th 1342, 1349 (2006).

"Lenders who omit the disclosure under title 15 U.S.C. § 1639 are subject to liability in the amount equal to the sum of all finance charges and fees paid by consumer, unless the failure to comply with the statutes is not material". *Pacific Shore Funding v. Lozo*, SUPRA AT 1350-51. The Supreme Court has held that missing disclosure extends the time for rescission to three years. *Beach v. Ocwen Federal Bank*, 523 U.S. 410,413 (1998. "The [Truth in Lending] Act provides the borrower's right to rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property whichever occurs first. Even if required disclosure have never been made," *Id.*

In a recent court decision in the 2nd Circuit, *Lippner v. Deutsche Bank*, 544 F. Supp.2d 695 (N.D.III. 2008), the court differentiated between a loan servicer and a creditor. The court held that a creditor who is also an assignee of a mortgage is responsible for the inherent TILA violation. *Lippner v. Deutsche Bank*, 544 F. Supp.2d 695, 705 (N.D.III. 2008).

> TILA defines a violation that is "apparent of the face" as a violation that "includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which dose not use the terms required to be used by this subchapter."

*Id*. At 703. The *Lippner* court held that a creditor is precluded from foreclosing on a property when defects are apparent on the face of TILA documents that disclose a valid TILA claim. 544 F.2d 695 (N.D.III. 2008). *In Yamamoto v. Bank of New York*, the court stated that the requirement that borrower  have the capacity to repay the lender under TILA rescission is order to survive a motion to dismiss is in the discretion of the court after consideration of all of the circumstances. *Yamamoto v. Bank of New York*, 329 F.3D 1167, 1173 (9Th Cir. 2003). "Thus a court **may** impose conditions on rescission that assures the borrower meets her obligations once the creditor has performed its obligation." *Id*. (emphasis added). Therefore, the *Yamamoto* court **dose not require that the borrower have the ability to pay the lender or offer tender to survive a Rule 12(b)(6) motion**. *Yamamoto v. Bank of New York*, supra at 1173. It would be inequitable to allow Moving defendants to benefit from a contract which was entered into in **willful violation** of Federal and State law.

Here the Defendant's willful failure to provide the required disclosure to Plaintiff would be a material failure to comply with TILA, since it would constitute a complete failure to provide the necessary documents to Plaintiff, thereby depriving him of the essential terms of the LOAN. The APR calculations did not take into account all the costs to borrower. Plaintiff obtained the loan on or about May 23, 2005, and entered into loan modification agreement on or about December, 2008, See Exhibit "1", incorporated herein by reference, Plaintiff filed this action on January 5, 2012. Plaintiff did not discover the TILA violation, until much after the foreclosure process started when he discovered the

fraud in late 2011, this is when plaintiff discovered the fraud and had the first opportunity to discover the fraud and misrepresentation, thus forming the basis of this TILA cause of action and other causes of action, the Notice of Trustee Sale See Exhibit "2", incorporated herein by reference noted his outstanding loan balance to be $ 547,223.67 an amount significantly higher than his loan amount which was $ 408,000.00 See Exhibit "3", incorporated herein by reference this difference alerted him to the negative amortization on his loan.

## The Statutes of Limitations to Recover Damages for Purported TILA Violations May be Equitably Tolled.

The one year statutes of limitations for damages under TILA may be tolled in cases where the borrower did not have a reasonable opportunity to discover the TILA violations;

> [T]he Ninth Circuit has held that although the TILA statutes of limitations generally begins to run at the consummation of the loan, the doctrine of equitable tolling may suspend the limitations period "until the borrower discovers or had the opportunity to discover the fraud or nondisclosure that forms the basis of TILA action."

*Pelayo v. Home Capital Funding*, No. 08-cv-2030 IEG (POR), 2009 WL 1459419, (S.D.Cal. May 22, 2009) (quoting *King v. Californi*, 784 F.2d 910, 915 (9th Cir. 1989). "If Plaintiff could not have known that a particular disclosure was missing or inaccurate until some later event occurred, the limitation period regarding that disclosure is tolled."

> The TILA requires a creditor to disclose to a borrower "certain material terms clearly and conspicuously in writing, in a form that [Plaintiff] may examine and retain for reference." In re Ralls, _230 B.R. 508, 515 (Bankr.E.D.Pa.1999); 15 U.S.C. §1638(b)(1); 12 C.F.R. § 226.71(a)(1). The material terms that must be disclosed include the finance charge and the annual percentage rate. 15 U.S.C. §§ 1602(u), 1638(a); 12 C.F.R. §§ 226.81(d), (e). Most importantly, the disclosures must reflect the actual terms of the legal obligation between the parties. [citation]

*Staley v. Americorp Credit Corp.*, 164 F.Supp.2d 578, 582 (D.Md.,2001) (citing 12 C.F.R. § 226.17©(1)). 'The accuracy demanded excludes not only literal falsities, but also misleading statements. *Amparan v. Plaza home Mort.; Inc.*, supra at *3, (quoting *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390-91 (3d Circ.2002)). "[T]he adequacy of TILA disclosures is to be assessed 'from the standpoint of an **ordinary consumer**, not the

1   perspective of a Federal Reserve Board Member, Federal judge, or English professor.'" Id.

2   (quoting *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 327-28 (7th Circ. 1999).

3       The Eastern District of California found that pleading that the creditor failed to

4   provide disclosures or that the disclosures were inaccurate is sufficient to withstand a 12(b)(6)

5   motion. *Maxwell v. Union Fidelity Mortg., Inc.*, No. 1:08-cv-001329 OWW SMS, 2009 WL

6   426189, at * 5 (E.D.Cal., 2009) (unreported).

7               **Allegations of inaccurate disclosures under the TILA are sufficient to survive**
                **a motion to dismiss. See *Staley v. Americorp Credit Corp.*,_164 F.Supp.2d 578,**
8               **583 (D.Md.2001) (allegations of inaccurate finances charges and APR**
                **sufficient to state a claim for relief); *Swanagan*v. Al Piemonte Ford Sales, Inc.***
9               **.,_No. 94 C 4070, 1995 WL 493480, at *4 (N.D.III> August 15, 1995). Plaintiff**
                **has alleged the disclosures with respect to finance charges, total payment**
10              **amount, and interest rate were inaccurate, and that the proper notices were**
                **not provided to him by the lender. He details the specific percentage rate that**
11              **was disclosed to him and what he alleges was the actual effective rate.**
                **Plaintiffs allegations give fair notice to Defendants of his claim and provide**
12              **sufficient detail to allow Defendants to respond to the claim. Moreover, the**
                **facts as alleged are not "so vague or ambiguous that the party cannot**
13              **reasonably prepare a response."**

14

15   *Maxwell v. Union Fidelity Mortg., Inc.*, No. 1:08-cv-001329 OWW SMS, 2009 WL

     426189, at *5 (E.D.Cal., 2009)(unreported) (quoting Fed.R.Civ.P. 12(e)). "The disclosure and
16
     explanation of the cost of the loan as an annual percentage rate must be clear and
17
     conspicuous." *Ralson v. Mortgage Investors Group, Inc.,* No. C 08- 536 JF (RS), 2009 Wl
18   688858, at *4 (N.D.Cal. 2009) (unreported). The district court in *Staley v. Americorp Credit*
19   *Corp.*, found that pleading that the disclosures were inaccurate without reference to the

20   specific statute or regulations is sufficient to survive a motion to dismiss. 164 F.Supp.2d 578,

     582-83 D.Md., 2001).
21

22       Here, Plaintiff alleges that Defendants, did not deliver the GFE to Plaintiff, other

     documents which were misleading, deceptive, inconsistent, incorrect, and not reasonably
23
     comprehensible by a consumer.   The three year statutes if equitable tolling is allowed, the
24   "FR" point to rescission of the loan transaction is completely extinguished at the end of the 3-

25   years period pursuant to Section 1635(f) in *Accord Beach v. Ocwen Fed. Bank* in the event

     of misleading disclosures, dose not apply here, the correct application for tolling would be

     from the day the fraud or misleading disclosures were discovered by Plaintiff.

Plaintiff alleges that the APR was incorrectly calculated and/or deceptively presented to Plaintiff. ["C"]. Plaintiff alleges that the APR did not reflect the actual cost of the LOAN. ["C"]. "Section 1638(a)(4) requires lenders to disclose the cost of a loan to the borrower 'as an "annual percentage rate" using that term.'[citation]. TILA defines the term 'APR' as the 'cost of your credit as a yearly rate.'"[citation]. *Ralston v. Mortgage Investors Group, Inc.*, No. C 08-536 JF (RS), 2009 WL 688858, at *4 (N.D. Cal. 2009)(unreported) (quoting 15 U.S.C. § 1638(a)(4); 12C.F.R. § 226.18(e)). Plaintiff alleges that he was not provided with a Good Faith Estimate or other disclosures in violation of Regulation Z. Plaintiff further alleges that Defendants acted in concert with respect to defrauding Plaintiff. Plaintiff sought information from Defendants via a QWR, to which Defendants did not adequately respond as required by RESPA. The court should find that the one year statute of limitations on TILA damages is tolled, and the 3-year statutes for rescission is tolled from the day Plaintiff discovered the fraud in late 2011 when the "NOTS" was issued.

## 3.0   RESCISSION

Plaintiff seeks rescission based upon equitable principles. "An action seeking rescission is essentially one for relief upon conditions that are just and fair." *Tarrant v. Butler*, 180 Cal.App.2d 235, 242, 4 Cal.Rptr. 230, 235 (1960). Plaintiff alleges that Defendants failed to provide the required TILA disclosures, and that he was not able to understand the terms of his agreement because the disclosures were not reasonably amenable to a consumer and Plaintiff. Plaintiff alleged that Defendants acquired unknown rights and/or responsibilities relating to Plaintiff's LOAN at some date unknown to Plaintiff. Plaintiff further alleged that Defendants made various misrepresentations of material fact with respect to the LOAN and with respect to modification procedures and workouts, and induced Plaintiff to rely on said misrepresentations. Plaintiff reasonably relied on statements made to him by Defendants. California law renders contracts, or contract terms, unenforceable if they were fraudulently induced by false representations. See Cal. Civ. Code § 1688; see also *Manderville v. PCG & S Group, Inc.*, 146 Cal.App.4th 1486, 1500-01, 55 Cal.Rptr.3d 59, 69-70 (2007).

> **Plaintiff is not required to tender. Cal. Civ. Code § 1693 provides *inter alia*: A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in**

> **tendering restoration of such benefits before judgment unless such delay has
> been substantially prejudicial to the other party; but the court may make a
> tender of restoration a condition of its judgment.**

Cal. Civ. Code. § 1693. Additionally, the California Court of Appeal, Fourth District, held that tender may not be required in *Onofrio v. Rice*, 55Cal.App.4th 413, 424, 64 Cal.Rptr.2d 74 (1997), *rehearing denied* (Jun 17, 1997), *review denied* (Aug 13, 1997) (quoting 4 Miller & Starr, Cal. Real Estate (2nd ed. 1989) Deeds of Trust & Mortgages, § 9:154, at pp. 508-509, fn. 86).

"Just as an agreement may produce more than one primary right, or produce more than one transactional nucleus of facts, the conduct of parties to the agreement may provide the evidentiary basis for obtaining rescission on more than one ground, on more than one occasion." *Nakash v. superior Court*, 196 Cal.App.3d 59, 70, 241 Cal.Rptr. 578, 584 (1987). As discussed previously under negligent misrepresentation and fraud, Plaintiff has pleaded with sufficient specificity for a claim of fraud. Plaintiff has asserted that Defendants represented false material and important facts which influenced Plaintiff's judgment with regard to the LOAN. Plaintiff has asserted reasonable grounds for believing the misrepresentation. Plaintiff did allege the Defendants' misrepresentation, were intended to induce Plaintiff's reliance on the facts misrepresented. Plaintiff has pleaded facts with the requisite specificity for a cause of action for rescission.

## 4.0   RESPA

Plaintiff directed the "QWR" to both Countrywide and Bank of America ("B of A"), because Country wide was the original servicer of the loan, when "B of A" acquired Country wide in 2008, "B of A" became the new servicer of the loan, Plaintiff request information from both because, Plaintiff was not sure if "B of A" was obligated to respond to "QWR" information that predated their servicing.

RESPA violation were directed towards Countrywide and "B of A" only as these 2 entities were the only two servicer of Plaintiff's loan, Plaintiff will correct this deficiency in his Amended Complaint.

The documents Plaintiff referenced in his Complaint that were not provided relate to mainly the identity of the true owner of the loan once the loan was sold into the securities pool and the party in interest, and a copy of the original wet signed Note and a copy of the original Deed of Trust among other things. Plaintiff on or about March 15, 2012 obtained information relating to the owner of the loan by visiting a local "B of A" branch where the manager of the branch was able to secure and provide documents that disclosed the investor/owner of the loan, listed as <u>BANA LSA HFI 1ST Lien</u>.

Plaintiff in his Complaint alleged that he sent a "QWR" to both Countrywide and "B of A" on December 27, 2010 Plaintiff also stated in his Complaint that "B of A" responded to the "QWR" on January 4, 2011 these dated are also referenced in the "FR" under RESPA. Countrywide failed to comply with the 20 day statutory period for response, as they never responded only "B of A" responded to the "QWR"

In the Amended Complaint Plaintiff will allege a claim under RESPA that is not time barred as well as cure the other deficiencies set forth in the "FR".

The Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605, requires servicers who receive a QWR to acknowledge receipt of QWR within 20 days, and respond to a QWR within 60 business days, See 12 U.S.C. § 2605(e)(1)(A);   •   •   •

12 U.S.C. § 2605 (e)(2).

> **A servicer who receives a qualified written request is required to investigate the request and respond to the borrower with appropriate information or explanation of the account status within 60 business days, 12 U.S.C. § 2605 (e)(2). RESPA provides that non-compliance with these requirements entitle a borrower to recover any actual damages to the borrower as a result of the failure."**

Ricotta v. Ocwen Loan Servicing LLC, No. 06-cv-01502-MSK-KLM, 2008 WL 516674, at *4 (D.Colo. 2008) (unreported) (quoting 12 U.S.C. § 2605 (f)(1). RESPA provides the requirements for an inquiry "qualified written request";

> **For purpose of this subsection, a qualified written request shall be written correspondence, other than notice on a payment coupon or payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and  (ii) includes a statement of reasons for the belief of the borrower, <u>to the extent applicable</u>, that the account is**

**in error or <u>provides sufficient detail to the servicer regarding other information sought by the borrower.</u>**

12 U.S.C. § 2605(e)(1)(B). (emphasis added). Therefore, RESPA provides for two possible ease of requesting information; (1) a request for documents relating to a dispute and a reason for the belief that the account is in dispute, or (2) a request for documents with "sufficient detail to the servicer regarding other information sought by borrower." 24 C.F.R. 3500.21(e)(2)(i); see also Greetis v. Nat. City Mortg,. No. 09—cv-1502, 2010 WL 695536, at *3 (S.D.Ca.. Feb, 24 2010).

The Central District of California found that a QWR need not reference, a dispute, **Garcia v. Wachovia Mortg, Corp.**, No. 2:09-cv-03925-FMC-FMOx, 2009 WL 3837621,

at *9 (C.D. Cal., Oct 14, 2009)

> **A "qualified written request" is a written correspondence that enables the servicer to identify the name and account of the borrower and contains a statement of the reasons for the borrower's belief that the account is in error, or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). (Emphasis added). Exhibit 9 clearly indicates who the borrower is and provides the account number from the Note.**

> **Additionally, while the letter dose not appear to contain a statement of the reason for the Borrower's belief that the account is in error, construed in light most favorable to Plaintiff it provides sufficient detail regarding "other information" sought by borrower.**

*Garcia v. Wachovia Mortg. Corp.*, No. 2:09-cv-03925-FMC-FMOX, 2009 WL 3837621, at 9 (C.D.Cal,. Oct. 14, 2009). However, whether Plaintiff correspondence amounts to a QWR is a question of fact not properly resolved on pleadings." *Lal v. American Home Mortg. Servicing, Inc.,* No. 2:09-cv-01585-MCE-DAD, 2009 WL 3126450, at *3 (E.D.Cal., Sept. 24, 2009).

The court in *Ricotta v. Ocwen Loan Servicing,* LLC, found that the borrower –21- Page letter to the servicer constituted a QWR and therefore the servicer was required to respond, No. 06-cv-01502-MSK-KLM, 2008 WL 516674, at *5 (D.Colo, 2008) (unreported)"The document is in writing, contains the Plaintiff's name and account number, and 'provider sufficient detail to [Ocwen] regarding other information sought by the Plaintiffs." *Ricotta v. Ocwen Loan Servicing,* LLC. No. 06-cv-01502-MSK-KLM, 2008 WL 516674, at *5

---

(D.Colo, 2008) (unreported) (alteration in original). The court found that Plaintiff's QWR, 'although bloated is not so overwhelming as to prevent Ocwen from extracting and responding to those portions that seek information that the Plaintiff is entitled to under RESPA." *Id.* The court found that the Plaintiff's QWR properly requested Information and the servicer failed to respond as required by RESPA. *Id.*

> **[T]he Plaintiff requested detailing of "every credit" and "every debit" that was posted to the account, information as to late fees and interest that had been charged to the account, copies of certain records relating to their account, and so on. These appear to be types of information that a borrower is entitled to request under RESPA, See generally *In re Maxwell*, 281 B.R 101, 122-23 (Bankr.D.Mass.2002) (finding RESPA violation where servicer failed to respond to request for itemized payoff statement and copies of settlement statements and Truth In Lending Act disclosure statements, among others).**

Here Plaintiff alleges he sent Countrywide and B of A, a "QWR". Plaintiff alleged that the QWR satisfies the statutory requirements of RESPA and Regulation X. Plaintiff requested information which clearly relates to servicing of the loan.

Plaintiff alleged that Countrywide and "B of A" failed to fully respond to the QWR in the time allowed under RESPA, Plaintiff alleged he suffered damages as a result of Defendant's conduct. Plaintiffs "QWR" referenced a dispute, and provides Countrywide and "B of A" with sufficient detail for the information sought by Plaintiff has been stated in the Complaint that the loan number, on the foreclosure notices are wrong/misstated, Plaintiff further alleged that this error may have caused his payments to be applied to the wrong loan account, rendering his loan into default, by the servicer, this clearly is a statement of belief of the borrower that his account is in error caused by the mix up in the loan numbers, this clearly is a servicing error by the servicer. Plaintiff requested identity of the owner of the Note, copy of the original wet signed Note, Original Deed of trust for inspection, but he was provided with copies, stamped and signed by a Title Company the stamp says "CERTIFIED TO BE A TRUE AND COMPLETE COPY OF THE ORIGINAL" See Exhibit "3", Plaintiff visited the Title Company shortly after he received the "QWR" document package to learn the identity of the signer and if the signer was authorized to certify document for the Title Company, the certifying officers signature is nothing more than a scribble, Title company could not provide the identity of the signer or the date the document was signed, when

Plaintiff inquired about the original Note, he was told it was sent to the original lender after closing of the loan, so the question arises, how did the copy of the original Note get certified just before the response in the QWR when the original was sent to the original lender, and no one seems to know where the original Note is. Plaintiff believes the stamp and signature is a forgery provided to deceive him.

> **The Complaint, broadly describes information sought regarding the servicing of the loan as required by Regulation X, 24 C.F.R. § 3500.21(e)(2), and alleges that Defendants neither timely responded to the QWR nor provided all the requested information. Nothing more is required to state a RESPA "QWR" claim.**

*Greetis v. Nat, City Mortg.*, No. 09-cv-1502, 2010 WL 695536, AT*3 (s.d.Ca.. Feb, 24, 2010) Contrary to the Defendants' claim, "fully respond[ing] to most of requests "dose not alleviate responsibility to respond to all the requests for information for which Plaintiff is entitled under RESPA [See Doc 27- 1, p. 5:21] Therefore, Plaintiff has satisfied the pleading requirements for a claim or violation of RESPA.

Plaintiff alleges that Defendants failed to provide the required disclosure to Plaintiff at LOAN origination in the Complaint. Plaintiff alleges that he was rushed through the signing of the LOAN documents, none of the documents he signed were explained to him, and that he was not given copy of the GFE.

> **[A] lender may be held liable for negligence "when the lender actively participates in a negotiations of a loan, including through a broker as a lender's agent."** *Mangindin v. Washington Mut. Bank*, **637 F,Supp.2d 700,0710 (N.D.Cal2009) (quotations and citations omitted); see also** *Wong v. Am, Servicing C.* **No. 2:09-cv-01506, 2009 WL 5113516 FCD-DAD, at *6 (E.D.Cal, Dec, 18, 2009) ("A lender may also be secondarily liable through the actions of a mortgage broker, who has a fiduciary duty to its borrower-client, if there is an agency relationship between the lender and broker.").**

*Lingad v. Indymac Federal Bank*, No. 2:09-cv-02347, 2010 WL 347994, at *5 (E.D.Cal. Jan. 29, 2010). Plaintiff alleged that all of the Defendants acted as agents and/or employees of other Defendants, and acted in concert for the purpose of injuring Plaintiff. Plaintiff further alleged that each of the Defendants gave consent to, ratified, and authorized the acts alleged to each of other Defendants. Plaintiff has pleaded sufficient facts for a cause of action for violation of RESPA.

Because of the fact alleged hereinabove in the RESPA section of this Objection to the "FR" Plaintiff's claim under RESPA should survive and be allowed to continue in the Amended Complaint. Plaintiff will make every effort to cure the defects that are listed in the "FR" under RESPA.

## 5.0    FDCPA

Plaintiff has alleged in his Complaint under FDCPA cause of action that Defendants are debt collectors, for this reason he informed them in writing to provide proof the debt is owed to them and to validate the debt, which Defendants have refused to do. The Complaint Constitutes a second notice to the Defendants to validate the debt, and cease all collection activities until they do so.   Clearly references the Defendants as debt collectors.

Defendants by their own admission in the Notice of Trustee Sale, and letter from "B of A"  See Exhibit "2" and Exhibit "4" incorporated herein by reference, are admitting that they are debt collectors, when a party admits to such facts the court is powerless to rule otherwise, as Plaintiff understands it.

Exhibit "2", **"RECONTRUST COMPANT, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose"**

Exhibit "4", **" BAC Home Loans Servicing LP is required by law to inform you that this communication is from a debt collector".**

For reason stated hereinabove and by Defendants own admission on recorded documents and written correspondence the argument in the "FR" are contrary to Defendants representation and admission.

Plaintiff's debt was assigned by MERS to BAC Home Loans Services, LP FKA Countrywide Home Loans Servicing LP, Via a recorded assignment of the Deed of Trust on April 28, 2011, See Exhibit "5", incorporated herein by reference,  the assignment was recorded much later then the alleged default by Plaintiff took place. Since the debt was assigned after the alleged default took place, accordingly make the Defendants debt collectors under 15 U.S.C. § 1692a the Act treats assignees as **debt collectors** if the debt sought to be collected **was in default** when it was acquired by the assignee.

The "FR" states in part ¶ 7 "(iii) concerns a debt which was not in default at the time it was obtained by such person......"" 15 U.S.C.A. § 1692A(6)(F)" this clearly dose not apply in Plaintiff's case as the debt was assigned much after the default took place.

Further down ¶ 7. "[A] debt collector dose not include the consumer's creditors, a mortgage servicing company, or an assignee of debt, as long as the debt was not in default at the time it was assigned" <u>Perry v. Steward Title Co</u>. 756 F.2d 1197, 1208 (5th Cir. 1985)" <u>Perry</u> dose not apply in Plaintiff's case as noted hereinabove.

Plaintiff has sufficiently alleged that Defendants are debt collectors, Plaintiff has disputed the validity of the debt owed to them, Plaintiff has asked for debt validations, Defendants, have failed to provide validation of debt for they can provide none, Defendants can not even get Plaintiff's loan numbers, right on the foreclosure notices, so how will they validate the debt? Plaintiff has alleged all Defendants involved in the foreclosure are debt collectors, Plaintiff has stated clearly that Defendants have failed to comply with his request to cease all collection activities until the debt is validated and defect in the foreclosure notices are cured, Plaintiff has stated Defendants have ignored his cease and desist warnings and continued to foreclose on his property. Plaintiff has satisfied all pleading elements of this cause of action.

For the stated reasons argument in "FR" must fail, Plaintiff FDCPA claim should be allowed to stand in the Amended Complaint.

## 6.0   **STATE LAW CLAIMS**

Plaintiff objects to dismissal of his State law claims if Plaintiff is unable to cure the defects in the TILA, RESPA and FDCPA claims, the court should in the interest of justice refuse to exercise supplemental jurisdiction over the State Law Claims so Plaintiff can file a suit in State Court under State Law causes of action, Plaintiff's State Law claims are still within the statutes of limitations by virtue of his loan modification in December, 2008, which tolled the limitation period.

# 7.0   **CONCLUSION**

The "FR" 'ORDER" is conflicting and confusing, the "FR" says the Amended Complaint should not include the FDCPA claim, this is tantamount to a final ruling without hearing Plaintiff's objection or the chance to appeal the dismissal of his FDCPA claim.

The "FR" also says that "IT IS HEREBY RECOMMENDED that: Plaintiffs Fair Debt Collection Practice Act be dismissed without leave to amend".

Plaintiff respectfully requests the court to clarify the "ORDER" after Plaintiff's objection to the "FR" is reviewed and allow leave to amend at that time with a new deadline for filing the Amended Complaint.

Plaintiff was granted an extension of time to file his objection to the "FR" until April 10, 2012, this further created a conflict with the deadline for filing the Amended Complaint and confusion as to the FDCPA claim to be included/excluded in the absence of a final ruling on his objections.

**Dated this 9th, day of April 2012.**

**Paul Emmanuel Poutcheu Yossa**
**Plaintiff in Pro Se**
**3903 Ripley Street**
**Sacramento, CA 95838**
**e-mail:-pptcheu@hotmail.com**
**(916) 220-0712**

# EXHIBIT "1"

# Countrywide
## HOME LOANS

Attn: Home Retention Division
Countrywide Modification
Four Allegheny Center 6th Floor
Pittsburgh, PA 15212

**Notice Date:** November 24, 2008

**Account No.:** 102331538

PAUL EMMANUEL POUTCHEU YOSSA
3903 Ripley St
Sacramento, CA 95838

**Property Address:**
2245 HARRIS AVE&3903 RIPLAY ST,
SACRAMENTO, CA 95838

---

### IMPORTANT MESSAGE ABOUT YOUR LOAN

We are pleased to advise you that your loan modification has been approved. In order for the modification to be valid, the enclosed documents need to be signed and returned.

The following amounts will be added to your current principal balance, resulting in a modified principal balance of $474,832.32 prior to your first payment date. The amount added to your loan is:

| | |
|---|---|
| Interest: | $9,159.59 |
| Fees: | $145.00 |
| Escrow: | $11,461.67 |
| Total: | $20,766.26 |

Your new modified monthly payment will be $1,681.71, effective with your January 1, 2009 payment. This payment is subject to change if your escrow account is reanalyzed or if you have a step rate, interest only or adjustable rate loan type. Your current interest rate is 5.75%. Your new interest rate will be 4.25%. We are fixing this rate for a period of 5 years. Please be advised your monthly payment will increase significantly when the interest-only period expires, and you are required to make principal and interest payments for the remaining term of the loan. This is sometimes referred to as payment shock. Your payment will increase significantly because we are adding the amounts indicated above to your unpaid principal balance, which will cause additional interest to accrue each month, and each payment will also include a larger component of principal. Your loan also contains a variable rate feature. Please read your loan modification and loan documents carefully to understand how your payment may increase even more, subject to the terms of your original note, as the interest rate on your loan fluctuates with the changing market. This Agreement will bring your loan current; however, you are still required to pay back the entire unpaid principal by the maturity date for your loan.

We encourage you to remit more than the interest-only payment when possible to reduce the impact of the Agreement on your future monthly payments. Please see the additional Payment Choices in your Interest-Only monthly statement for ways to help you pay-down principal. Paying down principal now will help both to reduce the amount of interest you owe now by reducing your new Interest-Only payment and will reduce your new monthly payment of principal and interest that will be due at the end of the Interest-Only period.

Your new reduced interest rate will be effective as of December 1, 2008 and it will remain in effect until November 1, 2013.

A breakdown of your payment is as follows:

| | |
|---|---|
| Interest Only : | $1,681.70 |
| Escrow: | $0.01 |
| Total Payment: | $1,681.71 |

* 1 O 2 3 3 1 5 3 8 + U S C + R R + 5 0 8 6 *

The HOPE Team
CHL Loan #: 102331538

WDGCSCOV LMS 8120 11/24/2008

Please sign, date and return one (1) complete set of enclosed documents to us in the re-usable Fed-Ex envelope. Please use the return label provided and mail no later than December 22, 2008 to the following address:



**HOME LOANS**

Countrywide Modification, Four Allegheny Center 6th Floor, Pittsburgh, PA 15212

## If you have questions, Loan consultants are standing by from 8:00 AM until 8:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM Central time on Saturday except holidays at 877-665-6866.

This offer is contingent upon Countrywide receiving relief from the Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification.

If any issues arise between the date of this commitment and the date on which all of the terms and conditions of this letter are finalized, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amount, then we may terminate this offer and pursue all collection action, including foreclosure.

This Letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property. In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than **December 22, 2008**, we will continue our collections actions without giving you additional notices or response periods.

The following documents have been enclosed:
**Modification Agreement**-Must be signed in the presence of a Notary. The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears.

The following documents may have been included if applicable to your loan:

**California All Purpose Acknowledgment** – This document will only be used if the loan modification agreement is being executed in the state of California. It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

**Bankruptcy Disclosure** – All parties who own an interest in the property must sign the Bankruptcy Disclosure as their name appears.

**THANK YOU FOR YOUR BUSINESS**

**The HOPE Team**

Countrywide is required by law to inform you that this communication is from a debt collector.

* 1 O 2 3 3 1 5 3 8 + U S C + R R + 5 O 8 6 *

# EXHIBIT "2"

LANDSAFE TITLE

RECORDING REQUESTED BY:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0089309
Title Order No. 11-0071932

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK 20111207 PAGE 0226

Check Number 7141
Wednesday, DEC 07, 2011 8:35:31 AM
TLI Pd.    $18.00    Rcpt # 9007005269

MLB/11/1-1

---

APN No. 252-0032-017-0000

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 05/23/2005.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE
SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust
executed by PAUL EMMANUEL POUTCHEU YOSSA, AN UNMARRIED MAN, dated 05/23/2005 and recorded
06/10/2005, as Instrument No. _____, in Book 20050610, Page 0699 of Official Records in the office of the County
Recorder of SACRAMENTO County, State of California, will sell on 12/28/2011 at 09:30 AM, At the East Main entrance to
the County Courthouse, 720 9th Street, Sacramento, CA 95814
at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and
interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as
more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the
real property described above is purported to be: 2245 HARRIS AVE&3903 RIPLAY ST, SACRAMENTO, CA
95838-3124. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designation, if any, shown herein.
The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus
reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $547,223.67.
It is possible that at the time of sale the opening bid may be less than the total indebtedness due.
In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or
federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank
specified in Section 5102 of the Financial Code and authorized to do business in this state.
Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title,
possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as
provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note,
plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary
or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219    DEC 0 1 2011

By:

Assistant Vice President
RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for
that purpose.

*Form ncs_2011.11.0_11/2011*

# EXHIBIT "3"

Recording Requested By:
W. WISMAR

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
SAMUEL FAMILIA



The undersigned hereby certifies this document
to be a true and correct copy of executed original
OLD REPUBLIC TITLE COMPANY
BY:

[Space Above This Line For Recording Data]

2011005461BG
[Escrow/Closing #]

00010233153805005
[Doc ID #]

# DEED OF TRUST

MIN 1001337-0000686106-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 23, 2005 , together with all Riders to this document.

(B) "Borrower" is

PAUL EMMANUEL POUTCHEU YOSSA, AN UNMARRIED MAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

-6A(CA) (0207)    CHL (08/02)(d)    VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Initials: PY

Form 3005 1/01

* 2 3 9 9 1 *

* 1 0 2 3 3 1 5 3 8 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00010233153805005

Borrower's address is
2245 HARRIS AVE&3903 RIPLAY ST, SACRAMENTO, CA 95838-3124
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, a Division of Treasury Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 23, 2005            . The
Note states that Borrower owes Lender
FOUR HUNDRED EIGHT THOUSAND and 00/100

Dollars (U.S. $ 408,000.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JUNE 01, 2035          .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _____

VMP -6A(CA) (0207)        CHL (09/02)              Page 2 of 16                              Form 3005 1/01

# EXHIBIT "4"

1 of 4



**Bank of America**

Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement Date 05/27/2011

**Account Number** 102331538

Property address
2245 Harris Ave&3903 Ripley St

**INTEREST-ONLY LOAN
MONTHLY STATEMENT
(During the Interest-Only
Period)**

0061282 01 AT 0.362 **AUTO  T2 0.1790 95838-3144
PO A4 A6 0101---0--2-7- C0000069 IN 1 P61342
PAUL EMMANUEL POUTCHEU YOSSA
3903 Ripley St
Sacramento CA 95838-3144

## IMPORTANT NOTICE

**BAC Home Loans Servicing, LP services your home loan on behalf of the holder of your note (Noteholder). This is to advise you that your account remains seriously delinquent.**

If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. This action may include returning payments that are less than the total amount due.

**Please give this matter your most urgent attention.** Please pay the total amount due immediately. BAC Home Loans Servicing, LP will proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process to the full extent permitted by law.

Note to Delaware Residents: Delaware residents who are struggling with their mortgage payments will find information on state-supported assistance by visiting www.deforeclosurehelp.org.

If you are unable to bring your account current, please contact us at 1.800.669.6654.

Sincerely,

LOAN SERVICING
Loan Counselor

## Your Payment Choices This Month

The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums. You can also pay additional Principal any month in any amount, by specifying "Additional Principal" in the payment coupon.

| Payment Information | Total Payment Amount** | Principal and/or Interest Payment | Outstanding Late Charges | Optional Products* |
|---|---|---|---|---|
| Interest Only Payment *** | $2,939.58 | $1,691.54 | $588.56 | $0.00 |
| 15-Year Amortized Payment Choice | This Payment Choice is not available this month. | | | |
| Amortized Payment Choice | This Payment Choice is not available this month. | | | |

Please note: Amounts above may change based on payments made, received or returned before or after this statement was created.
**Outstanding late charges up to $400.00 are reflected in the payment choice amount.
*** The Amortized & 15-year Amortized Payment Choice (Amortized Payment Choices) amounts are based on the assumption that these payments will always be received on the scheduled due date. You are not required to pay these amounts. The extra amount of Principal included with each of these alternative Amortized Payment Choices will be applied as a partial Prepayment of Principal on the date the payment is received. The interest portion of your payment will be applied as of the scheduled due date. The Amortized Payment is similar to, but not identical to the Interest and Principal payment that you will be required to make after the Interest-Only Period ends. When that happens, your Interest and Principal payments will be applied to your loan as of the scheduled due date. The Amortized Payment Choices will reduce your principal balance and the amount of interest you will pay over the life of this loan. These Amortized Payment Choices are provided to you as an additional service, but by no means are you limited to these choices when it comes to the amount of partial prepayments of principal that you may select on your own. IMPORTANT NOTE: Be sure you review any prepayment penalty provision you may have in your loan. Depending on the amount of any partial Prepayments and when you make them, you may owe a prepayment charge at the time you payoff your loan.

## Your Home Loan Snapshot as of 05/27/2011

| | | | |
|---|---|---|---|
| Loan type | 30 Yr Conv Jumbo ARM | Payment Due Date: | 06/01/2011 |
| Principal balance | $474,787.34 | Past Due Payment Amount | $64,600.85 |
| Escrow balance | -$21,839.22 | Fees Due | $180.00 |
| Interest rate | 4.250% | Late Charge if payment is received after 06/16/2011 | $84.08 |

We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

**BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.**

C3 1907 Investor Inquiry non-GSE 14286 12/01/2011

**Bank of America**

**Home Loans**

Customer Service Department. CA6-919-01-41
PO Box 5170
Simi Valley, CA 93062-5170

**Notice Date:**   March 15, 2012

**Loan No.:**   102331538

Paul Emmanuel Poutcheu Yossa
3903 Ripley St
Sacramento, CA 95838

**Property Address:**
2245 Harris Ave&3903 Riplay St
Sacramento, CA 95838

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

Thank you for your recent inquiry regarding the investor, or owner of your loan. Your home loan is serviced by Bank of America, N.A.. The loan servicer collects your mortgage payments, sends billing statements, and provides day-to-day servicing of your account on the investor's behalf.

Bank of America, N.A. is authorized by the investor of your loan to handle most inquiries and requests in connection with your loan. In cases where Bank of America, N.A. does not have authority to make decisions or otherwise act independently on the investor's behalf in response to your request, Bank of America, N.A. will gather relevant information from you, consult with the investor about your request and communicate the decision to you.

If you have any questions regarding your loan or the servicing of your loan, you should always contact your servicer first at the telephone number or mailing address below.

Servicer's Name:     Bank of America, N.A.
Servicer's Mailing Address **(for correspondence other than payments)**:
Customer Service Department, CA6-919-01-41
PO Box 5170
Simi Valley, CA 93062-5170
Servicer's Telephone Number (Toll free):     (800) 669-6607

To ensure that your loan payments are applied to your account timely, please continue to send payments to Bank of America, N.A. at:

Payment Processing, PO Box 650070
Dallas, TX 75265-0070

---

**INVESTOR INFORMATION**

The investor, or owner of your loan, is the person or entity that is entitled to repayment of the loan. We have provided your investor information below. Please note that you should not send payments to your investor and that inquiries and requests should be directed to your loan servicer.

Investor's Name:                           BANA LAS HFI 1ˢᵗ Lien
Investor's Mailing Address:             BAC Corp Owned Asset
Simi Valley, CA 93065

---

**THANK YOU**

If you need more information, please call us at (800) 669-6607, Monday-Friday 7a.m. - 7p.m. Local Time. We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all checks and correspondence.

# EXHIBIT "5"

Recording Requested By:
Bank of America
Prepared By: Diana DeAvila
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 67410233153810567

Property Address:
2245 HARRIS AVE&3903 RIPLAY ST
Sacramento, CA 95838
CAD-ADT 12557890          4/13/2011

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK **20110428** PAGE **0810**
Check Number  3445
Thursday, APR 28, 2011  1:17:16 PM
Tbl Pd    $21.00    Nbr-0006768554

MLB/11/1-2

This space for Recorder's use

MIN #: 1001337-0000686106-9          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is BAC CORP OWNED ASSET, SIMI VALLEY, CA 93065 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          COUNTRYWIDE BANK, A DIVISION OF TREASURY BANK, N.A.
Original Borrower(s):     PAUL EMMANUEL FOUTCHEU YOSSA, AN UNMARRIED MAN
Original Trustee:         RECONTRUST COMPANY, N.A
Date of Deed of Trust:    5/23/2005
Original Loan Amount:     $408,000.00

Recorded in Sacramento County, CA on 6/10/2005, book 20050610, page 0699 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

4/13/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:
Chester Levings, Assistant Secretary

State of California
County of Ventura

On April 13th 2011  before me, Evette Ohanian, Notary Public, personally appeared Chester Levings, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Evette Ohanian                    (Seal)
My Commission Expires: 12/27/2011

EVETTE OHANIAN
COMM. #1767925
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 27, 2011

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

## <u>PROOF OF SERVICE BY MAIL</u>

Paul Emmanuel Poutcheu Yossa Pro Se

        Plaintiff,

                      CASE NUMBER:

                                    S-12-0023 MCE GGH PS

     v.

Countrywide Home Loans, Inc. , et al.

Does 1-100

         Defendants

I, <u>NADEEM AHMAD (MR.)</u> hereby certify that on <u>April 10 , 2012</u>, I served a copy of

the document entitled "Plaintiff's Objections to Findings and Recommendations"

On each Defendant listed in the Complaint, by placing a copy in postage paid envelope
addresses to the persons / entities, by depositing said envelop in United States mail at,
Sacramento , CA.
I served the above captioned document at Defendants addresses in the complaint as listed
below.

1. Countrywide Home Loans Inc.
   P.O. Box. 1140
   Semi Valley, CA, 93062.

2. Bank of America, N.A.
   450 American Street.
   Semi Valley, CA, 93065

3. Recontrust Company, N.A.
   1800 Tapo Canyon Road
   Semi Valley, CA, 93063

4. Mortgage Electronic Registration Systems Inc
   1818 Liberty Street, Suite 300
   Reston, VA, 20190

I declare under penalty of perjury that the foregoing is true and correct.

                          (Signed)