1

**Paul Emmanuel Poutcheu Yossa**
**3903 Ripley Street**

2

**Sacramento, CA, 95838**
**916-220-07121**

3



**Plaintiff in Pro Se**

4

**Paul Emmanuel Poutcheu Yossa**

5

6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISCTRICT OF CALIFORNIA

8

### SACRAMENTO DIVISION

9

10

**Paul Emmanuel Poutcheu Yossa**     )   **Case No:** 2:12CV0023 MCE GGH
                                     )
11

          **Plaintiff,**             )   **AMENDED COMPLAINT:**
                                     )
12

              **v.**                 )   **1. Violation of RESPA 12 U.S.C. § 2605 et. seq**
                                     )
13

**Countrywide Home Loans, Inc.**     )   **2. Violation of Truth in Lending Act, 15**
                                     )       **U.S.C. 1601 et.,seq; .**
14

**Bank of America, N.A**             )
                                     )   **3. Violation of Bus. & Prof Code 17200, et**
15

**Recontrust Company, N.A.**         )       **seq, "Unlawful" Business Practices (TILA)**
                                     )
16

**Mortgage Electronic Registration** )   **4. Negligent Misrepresentation**
                                     )
17

**Systems, Inc.**                    )   **5. Fraud**
                                     )
18

**DOES 1- 100**                      )   **6. Breach of Contract**
                                     )
19

          **Defendants**             )    **Magistrate Judge; Gregory G. Hollows.**
                                     )
20

                                     )   **DEMAND FOR JURY TRIAL**

21

### THE PARTIES

22

23

1.    Plaintiff Paul Emmanuel Poutcheu Yossa, a minority borrower of African descent

24

      (hereinafter "YOSSA") is and all times relevant, was an individual, residing in the

25

      County of Sacramento. Plaintiff is the owner of certain real property (Duplex)

commonly known as 3903 Ripley Street, Sacramento, CA, 95838, and 2245 Harris

Avenue, Sacramento CA, 95838 (hereinafter :"Subject Property.").

2. Defendants Countrywide Home loans Inc (hereinafter "Countrywide") is a corporate entity, with its principal place of business at P.O. Box. 1140, Semi Valley, CA, 93062, Countrywide is and at all times relevant, was doing business in the State of California, and in the County of Sacramento. Countrywide was engaged in widespread Predatory lending practices through out the country, and more specifically in the State of California, of such Predatory loans and lending practices, Countrywide was deliberately and maliciously targeting Black, Hispanic and minority borrower for their predatory loan products because it would earn them higher, fees and interest rates. Countrywide sold the loan into a securities pool or trust on Wall street just before the loan closed, or after loan closing, exact time of the sale will be determined in discovery. The current owner of the loan and party entitled to receive payment of the loan is BANA LAS HFI 1st Lien. After the loan was sold Countrywide became the servicer of the loan.

3. Defendant Bank of America, N.A., is a corporate entity (hereinafter "B of A") with its principal place of business at 450 American Street, Semi Valley, CA, 93065 "B of A" at all times relevant was doing business in the State of California, and in the County of Sacramento. "B of A" in January of 2008 announced that it would purchase Countrywide and the transaction was completed in July 2008, "B of A" became the new servicer of the loan in July 2008, after it acquired Countrywide.

4. Defendant Recontrust Company (hereinafter, "Recontrust") is the foreclosure arm of B of A and acts as a Trustee in issuing Notices of Default "NOD" and Notice of Trustee's Sale "NTS" in the event of a default and subsequently conducts the Trustee's sale of the

property if the default is not cures. Having their principal place of business at 1800

Tapo Canyon Road, Semi Valley, CA, 93063. Recontrust at all times relevant was doing

business in the State of California, and in the County of Sacramento. Recontrust is not

licensed or registered with the California secretary of State thus not legally entitled to

do business in the State of California.

5.   Mortgage Electronic Registration Services "MERS" is a Delaware Corporation, MERS

lists their contact address by mail on their website as Mortgage Electronic Registration

Systems, Inc, 1818 Liberty Street, Suite 300, Reston, VA, 20190. MERS is engaged in

the business of holding title to the mortgages, MERS dose not have any beneficial

interest in the mortgages. It dose, business in the State of California as evidenced by

inclusion of its name on the Deed of Trust. MERS was not registered to do business in

California and its agent for service of process resigned on March 25, 2009.

6.   This action pertain to an alleged, loan and security interest originated by the original

lender, a securities pool on Wall Street, having a loan number of, 102331538 ("The

Loan") the said loan was sold into a securities pool identified as BANA LAS HFI 1ST

Lien See Exhibit "1" incorporated herein by reference. Countrywide became the

servicer of the loan, starting with the first payment due date of July 1, 2004 and "B of

A" is the current servicer of the loan after it acquired Countrywide, in July 2008.

7.   Plaintiff Intends this action and document to represent a formal complaint and also a

second attempt as a Qualified Written Request  "QWR" Plaintiff previously sent a

"QWR" to all three named Defendants, dated December 28th, 2010, See Exhibit "2'

incorporated herein by reference, which they failed to answer in its entirety, on the

grounds that it goes beyond that which is available through a QWR and continued to

foreclose on Plaintiff's property. The complaint contains Plaintiffs name, property address, account numbers, and demands in connection with the subject Loan as to each originating lender and each subsequent servicer: The record shows Defendants have ignored, and failed to respond to yet another attempt at QWR by Plaintiff via the complaint, Plaintiff by this Amended Complaint is trying for the 3rd time to get a response to her QWR.

a. Provide names of each lender, servicer, creditor or owner justify any legal right to service or own, be named 'creditor" and provide proof that Defendants, and each of them in fact has ownership or other authority regarding the Loan;

b. Provide names of each lender, servicer, creditor or owner provide Plaintiff an opportunity to inspect all the original Notes and Deeds relating to the Loan;

c. Provide names of each lender, servicer, creditor, owner state and prove that it did not violate Real Estate Settlement Procedures Act ('RESPA") regarding the loan, or admit that it violated RESPA;

d. Provide names of each lender, servicer, creditor or owner identify each and every transfer or sale to other of any right in the Loan, the Subject Property or the Note, along with a copy of each notice provider to Plaintiff of such a transfer or sale;

e. Provide names of each lender, servicer, creditor or owner in possession of any Truth-in Lending disclosure, settlement statement or HUD-1 provide a copy of the same to Plaintiff;

f.  Provide names of each lender, servicer, creditor or owner provide a copy of any notice of cancellation rights, notice of rescission rights, or correspondence or written document discussing cancellation rights or rescission rights to Plaintiff;

g.  Provide names of each lender, servicer, creditor or owner provide a complete list of all telephone logs, communications logs, and correspondence logs, as well as all recordings, documents and digital versions of the subject matter of these logs to Plaintiff;

h.  Provide names of each lender, servicer, creditor or owner provide documentations and proof of ownership for all parties currently holding any ownership rights under the Note, relating to the Loan, and provide an opportunity to inspect the original Note and deed of trust which each lender, servicer or creditor claims any right to receive payments.

8.  Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore sues these Defendants by such fictitious names, DOES 1-100 at all times relevant herein were employees and/or agents of Defendants and each of them. Plaintiff will designate each DOE Defendant and serve them with this Amended Complaint when their true names and capacities have been ascertained. Plaintiff alleges that each of said Defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused or is responsible in some manner for the damages proximately caused hereby.

9.  Plaintiff is informed and believes that at all times relevant all of the Defendants acted in concert with the other Defendants names in this Amended Complaint in the wrongful and improper acts/activities alleged herein and, therefore, are responsible for the

damages as alleged by Plaintiff. Plaintiff is further informed and believes that at all times relevant each individual, employee and person named in this Amended Complaint was the agent and/or employees of each of the remaining Defendants and/or Defendants employees, and acted in concert for the purpose of injuring Plaintiff as alleged herein.

10. Plaintiff is further informed and believes that at all times mentioned herein each Defendant and individual named in this Amended Complaint was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants. Plaintiff is informed and believes that at all times mentioned herein, that all Defendants are liable for the actions of each of the individuals mentioned herein.

11. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants have pursued a common course of conduct, acted in concert with, and conspired with, each other, and have aided and abetted one another to accomplish the wrongs complained herein.

12. On 02/09/2011 Recontrust recorded Notice of Default (NOD) See Exhibit "3" incorporated here in by reference, the NOD states that Recontrust is acting as an agent for MERS who is the beneficiary under the deed of trust  this notice is defective by citing loan numbers that is wrong and dose not belong to Plaintiff's loan,  The Deed of Trust in this case states at (E)

> 'MERS"  is Mortgage Electronic Registration Systems, Inc, MERS is
> is a separate corporation that is acting solely as a nominee for Lender and
> Lender's successors and assigns. **MERS is the beneficiary under the Security**
> **Instrument**. MERS is organized and existing under the laws of Delaware,
> and has an address and telephone number of P.O Box 2026, Flint, MI 48501-
> 2026, tel, (888) 679-MERS

13. As a result of said express conditions, and pursuant to California Commercial Code §
1201 (21), 3301, and 3309, MERS has no beneficial interest or right to enforce the
terms of the Promissory Note, because it is not in possession of the Promissory Note
and is not the lender.

## JURY TRIAL DEMANDED

Plaintiff complains against Defendants herein and demands a trial by jury on all issues.

## JURISDICTION AND VENUE

14. This court has jurisdiction pursuant to 28 U.S.C. 1331 under the following statues: the
Truth-in-Lending Act, 15 U.S.C. 1601 et. seq.("TILA") and RESPA 12 U.S.C. §2605
and 12 U.S.C. §2601 et. seq.

15. In addition, this court has supplemental jurisdiction over all State law claims alleged
herein pursuant to 28 U.S.C. §1367.

16. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff resides
in this district, Defendants do business in this district, the Subject Property is in this
district, and all events in question took place in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

17. At the request of Countrywide, Plaintiff obtained a, Loan No. 102331538 on or about
May 23, 2005.

18. Plaintiff is informed and believes that the wrongful acts of Defendants include
violations of Federal and State law before the initiation of the Loan after closing of the

loan as well as during the servicing period of the LOAN, and finally during the foreclosure process.

a.  Prior to the funding of the LOAN, Countrywide represented to Plaintiff that very favorable loan, loan terms and interest rates were available to him;

b.  As a result, Countrywide and others convinced Plaintiff to finance the Subject Property and to take out financing for that purpose with Countrywide.

c.  Plaintiff is further informed and believes that Countrywide and other Defendants knew or intended that Plaintiff receive a Predatory loan, and that the worse loan produced would yield higher commission for them because it was at a higher interest rate and subject to higher fees.

d.  Plaintiff was promised that his monthly mortgage payments would be much lower than they actually were;

e.  The LOAN had a negative amortization feature, whereby the balance Plaintiff owed on the loan would increase over time. This feature of the loan was never explained to Plaintiff

f.  LOAN payments were insufficient to pay both principal and interest on the loan.

g.  Plaintiff is further informed and believes that Countrywide and others, knew or should have known that in the event of Plaintiff's inability to perform on the LOAN, commissions and other foreseeable charges to Plaintiff would constitute an additional payment stream to the benefit of Defendants.

19. Although Countrywide, and others made certain representations regarding the LOAN, in actuality, the LOAN was not as represented because among other things:

   a. It was at a higher interest rate than what was represented.

   b. The payments were higher than the payment as represented to and agreed upon by Plaintiff;

   c. The LOAN subsequently became unaffordable for Plaintiff;

   d. Plaintiff was accordingly put into a mortgage all without Plaintiff's informed consent.

20. Plaintiff is informed and believes that Defendants failed to provide Plaintiff with the proper disclosures required under Federal and State law:

   a. Defendants did not provide to Plaintiff accurate disclosures of the costs of financing, the Annual Percentage, Rate ("APR"), the payment obligations, or the type of loan at the time of the transaction;

   b. No Good Faith estimates were provided;

   c. Defendants did not provide to Plaintiff accurate disclosures of the costs of financing, the APR, the payment obligations, or the type of loan subsequent to the time of the transaction.

   d. Defendants charged excessive amounts to Plaintiff in conjunction with the loan origination including but not limited to:

e. Numerous disclosed fees and charges purporting to be reasonable and to reflect the actual costs and values of the same, but actually constituting profit lines to the Defendants;

h. Other unknown and undisclosed fees, commissions, premiums and compensation.

21. Plaintiff is informed and believes that Defendants, Countrywide, "B of A" and Recontrust received Qualified Written Requests regarding the LOAN from Plaintiff and failed, to adequately respond to Plaintiff's requests for information, and in the time frame mandated by RESPA which may have enabled Plaintiff an opportunity to work out the LOAN.

22. Plaintiff is informed and believes that Defendants Countrywide, "B of A", failed to fulfill their lawful obligations regarding servicing of the LOAN

23. Plaintiff is informed and believes that, Countrywide, "B of A" and/or their agents breached their duties of care to Plaintiff by, among other things, the following:

a. Structuring the LOAN with payments that Plaintiff could not afford;

b. Falsifying loan applications (particularly with regard to Plaintiff's income level);

24. At the time the LOAN was executed, predatory lending behavior evidenced by Defendants includes, but is not limited to, the following:

a. Creating the LOAN with a high APR:

b. Charging improper broker fees:

c. Rushing the loan closing.

d. Violating their own underwriting standards to push loans through.

25. Furthermore, Plaintiff is informed and believes that Countrywide, and other defendants and/or their agents willfully deceived Plaintiff by, among other things, the following:

a. Defendants created a Note with so many different addenda, riders and disclosures that the contract was incomprehensible to a standard consumer; Workings of the loan and various LOAN documents were not explained to Plaintiff, and the loan signing was rushed.

b. Defendants provided loan payment examples as purported disclosures of payment obligations that were not consistent with stated loan payments, and required complicated extrapolation to calculate payments for the actual loan.

26. Plaintiff is informed and believes that the loan securitization process has created a situation where no single entity has complete ownership of the LOAN, or even sufficient authority to negotiate a workout or modification to the LOAN. As a result the Originating Lender, unknown investors and one or more servicers all entered into servicing agreements with an entity that cannot speak for the LOAN. Defendants represented that they have the right and authority to foreclose on the Subject Property. Plaintiff is informed and believes that this representation was false because all of Countrywide rights regarding the LOAN are derivative of rights held by unknown investors whose rights are themselves, dependant on the rights of the Originating Lender who perpetrated the initiation of the LOAN. Plaintiff is informed and believes that Countrywide, "B of A", and MERS falsely, wrongfully, and negligently or intentionally represented to Plaintiff and to others that it had authority to service,

collect, negotiate, work-out, and foreclose the LOAN notwithstanding the deficiencies with the LOAN, defective Notice of defaults, Notice of Trustee sale and Assignments.

27. Plaintiff is informed and believes that the LOAN and related contracts contain conflicting terms and interest rates that are not reasonably comprehensible by a consumer, possibly including but not limited to the Note, Addenda, Trust Deed, Rider(s), TILA, Estimated Settlement Statement(s), Final Settlement Statement(s), Escrow Instruction(s), all containing complicated and in many cases contradictory terms.

28. Plaintiff relied on the representations of Countrywide and other Defendants as alleged herein because Plaintiff reasonably believed that Defendants are licensed banks, and mortgage companies, and are fiduciaries of Plaintiff, owing Plaintiff duties of utmost care, loyalty, professionalism and to conduct all real estate transactions herein without violating any of the fiduciary duties owed to Plaintiff.

29. Countrywide and other Defendants breached their fiduciary obligations owed to Plaintiff, were negligent, made negligent misrepresentations, intentional misrepresentations, breached their contract with Plaintiff, were professionally negligent and caused Plaintiff damages.

30. Plaintiff is informed and believes that Countrywide, "B of A" and MERS and others acquired unknown rights and/or responsibilities relating to Plaintiff's LOAN from Countrywide, date unknown to Plaintiff. All such rights and responsibilities depend on the rights of the initial lender, to be determined in discovery.

31. The terms of the LOAN are meaningless and unenforceable if the rights of the original lender are unenforceable.

32. Plaintiff is informed and believes that Countrywide and "B of A" and/or any entity that claim to owns any rights as to the LOAN, steps in the shoes of the Originating unknown lender, to shield them from liability with respect to the deficiencies in the loan documents as well as the failure to provide Plaintiff with suitable disclosures and contract terms, by and/or any entity that owns any rights as to the LOAN, cannot take any action on the LOAN that the Originating Lender would have been prevented from taking due to the deficiencies in the LOAN. Plaintiff in informed and believes that, any entity that owns any rights as to the LOAN, is contractually liable for the deficiencies at the originating stage of the LOAN.  Countrywide, "B of A", MERS and Recontrust are necessary party to this action to resolve the respective interests of the parties over the subject Property.

33. As a proximate result of Defendants' conduct as herein alleged, Plaintiff sustained damages, including monetary loss, emotional stress, emotional distress, loss of income, loss of credit, loss of opportunities, and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, standing in the community and mental and anguish, all to Plaintiff's damage in an amount to be established at trial.

34. Plaintiff's damages included but are not limited to excessive fees, charges, penalties and interest.

35. Each Defendant herein is responsible for the acts of other Defendants and their predecessors based on the doctrine of *respondeat superior*. Further, each Defendant herein is responsible for the acts of other Defendants because each Defendant negligently supervised the other Defendants and is therefore directly responsible for the acts of the other Defendants.

36. All Defendants are agents, employees and other fiduciaries of each other as set forth within. Each of the wrongful acts by Defendants against Plaintiff set forth within, were done in the scope of employment. Defendants were acting as agents and employees and in the transaction of the business of the employment or agency when performing their wrongful actions. Defendants are therefore directly, jointly, and severally liable to Plaintiff for their actions, the employees of said parties, and all other Defendants as set forth herein.

37. The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, as well as fees and costs.

38. Countrywide loan and business practices were as the record show, clearly designed to engage in Predatory Lending, Countrywide has been sued by many States over their Predatory Lending practices, and in almost all case has reached a settlement with the Attorney Generals, the very fact they are settling out of court on such large scale, speaks volume of their guilt.

# FIRST CAUSE OF ACTION

## VIOLATION OF RESPA 12 U.S.C. #2605

39. Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

40. The Loan transaction between Plaintiff and Defendants is a mortgage loan covered by RESPA.

41. A violation of RESPA is also made unlawful under California State law by Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or any regulation promulgated there under, violates this division [California Residential Mortgage Lending Act]."

42. Plaintiff is not certain at this time exactly which of Defendants was actually the servicer of the Loan at any given time.  However, due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiff regarding the roles and, identities, of the various entities that were purportedly handling his Loan at any given time, these allegations are made as to all Defendants.

43. Defendant violated RESPA at the time of the closing of the Loan subject to this First Amended Complaint by failing to correctly and accurately comply with the disclosure requirements provided therein.

44. Defendant Countrywide and B of A violated RESPA, 12 U.S.C. § 2605(e)(2), by failing and refusing to provide a proper written explanation or response to Plaintiff's QWR.

45. Plaintiff is informed and believes, and thereon alleges, that these Defendants have

engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

46. As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit.  Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable expenses.  Defendants Countrywide, "B of A" failed to adequately respond to Plaintiff's requests for information regarding the LOAN, within the time specified by RESPA, As a proximate result of the negligent conduct of Defendants and their failures as herein alleged, Plaintiff sustained damages, including monetary loss, emotional distress, loss of income, loss of credit, loss of opportunities, and other damages to be determined at trial. As a proximate result of Defendant' breach of duty and all other actions alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental pain and anguish, all to Plaintiff's damage in an amount to be established at trial. Plaintiff seeks to recover all possible damages Plaintiff is entitled to recover pursuant to RESPA, including statutory and punitive damages.

## SECOND CAUSE OF ACTION

### (Violation of Truth in Lending Laws, 15 U.S.C.A §1601,*et seq.*,)

47. Plaintiff incorporates all preceding paragraphs as though fully set forth herein, 15 U.S.C.A. § 1601, *et seq.*, is the Federal Truth in Lending Act ("TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226) and its Official Staff Commentary. Compliance by

lender with Regulation Z Become mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

48. The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R §226.1 which reads:

**§226.1 Authority, purpose, coverage, organization, enforcement and liability...**

(b)        Purpose.  The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transaction that involve a lien on consumer's principal dwelling...

49. Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

**§226.1 General disclosure requirements.**

(a)        Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. this disclosures, shall be grouped together, shall be segregated from every thing else, and shall not contain any information not directly related to the disclosure required under §226.18.

50. The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uniformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

51. Defendants' ARM loan violates TILA because Defendants fail to comply with the disclosure requirements mandated by Regulation Z and Official Staff Commentary

issued by the Federal Reserve Board.  Defendants failed in a number of ways to clearly

or accurately disclose the terms of the ARM to Plaintiff, as Defendants were required to

do under TILA.  These violations are apparent on the face of the TILA Disclosure

Forms, See Exhibit "3" incorporated herein by reference.

52. As such, Plaintiff seeks redress under the Truth in Lending Act.  This action seeks to

obtain, injunctive relief, redress, restitution, disgorgement, money damages, attorney's

fees and other equitable relief against Defendants for engaging in unfair or deceptive act

or practices in violation of TILA.

53. The TILA violations committed by Defendants are more specifically detailed as

follows:

## A.      Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws

54. 12 C.F.R §226.17 and 12 C.F.R. §226.19 require the lender to make disclosures

concerning the interest rate in a clear and conspicuous manner. Further, a misleading

disclosure is as much a violation of TILA as failure to disclose at all.  Defendants

willfully and fraudulently failed to meet the disclosure mandates required of them

concerning the interest rate Defendants actually applied to Plaintiff's loan, as well as the

interest actually charged to Plaintiff.

55. Defendants' disclosure in the Promissory Note, See Exhibit "4" incorporated herein by

reference, the interest rate is, at best, unclear and inconspicuous. At worst, it is

intentionally deceptive.  In either instance, it is certainly different than the interest rate

set forth by Defendants in the TILA disclosure Form. interest rate information set forth

by Defendants in the Note conflicts with the interest rate information set forth by the Defendants in the TILA Disclosure Form.

56. The interest rate set forth in the Note is the "teaser" rate that Defendants, in fact, apply to the loan for the first month payment only. However, Defendants do not make clear in the Note or anywhere else that this low promised rate (the same rate upon which Defendants base the written payments schedule provided to Plaintiff) is only offered for the first thirty 30) days of the loan. Defendants employ a most convoluted, confusing and circuitous methodology in describing the interest rate. Somewhere in the Note, Defendants state that the promised low interest rate is the rate until the "change date". A description of the change date is found somewhere else in the Note. The deceptive method employed by Defendants in this regard makes it extremely difficult for anyone to arrive at the conclusion that the change date corresponds to the very first month payment Plaintiff made on his loan.

57. The language used by Defendants to disclose the interest rate on Plaintiff's loan was anything but clear, and conspicuous. Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiff. In particular, it is virtually impossible to discern when Plaintiff would receive the low interest rate he was promised, if, in fact, it can be determined at all. And, the truth is that Plaintiff received the low interest rate, for only the first thirty days. Defendants' promise of low interest rate is and was wholly illusory and a deception practiced on Plaintiff by Defendants to facilitate sale of their loan to Plaintiff.

58. The Note also sets for the amount of Plaintiff's initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by

Defendant was true and was being applied to the principal balance on the loan. This is a further deception committed by Defendants, because the real interest rate charged on the loan by Defendants turn out to be much higher than the low interest rate promised to Plaintiff. The payment amount is included to deceive Plaintiff into falsely believing he is, in fact receiving the teaser rate promised to him.

59. The TILA disclosure Form is also confusing and deceptive for much the same reason. It shows the scheduled payments for the first 3 years of the loan as being based on the low "teaser" rate Plaintiff was promised. In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiff on his loan.

60. Lastly, as concerning Defendants' failure to accurately, clearly or conspicuously disclose the actual interest rate applied to Plaintiff's loan, the Note expressly states and/or implies that Plaintiff's payments will pay off principal and interest on the loan. That is, based on the payment schedule and initial monthly payment amount presented to Plaintiff by defendants, and set for in the Note and TILA Disclosure Form, Plaintiff will be paying off principal and interest on his loan by submitting payments in accordance with the payment schedule. The contractual language in the Note only makes sense, and can only be true, if the interest rate actually applied to Plaintiff's loan by Defendants was, in fact the "teaser" rate promised by Defendants. Thus, Plaintiff believed that the low rate promised to him would be applied to his loan. However, the true fact is that the payment established by Defendants did not pay any principal on the loan at all. The payment established by Defendants only covered a portion of the interest actually charged Plaintiff by Defendants each month on his loan.

61. Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiffs, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

## B.   Defendants Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws.

62. 12 C.F.R. 226.19 sets forth additional specific disclosure requirements for residential home loans:

> §226.19. Certain residential mortgage and variable-rate transactions.
>
> (b)        Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transactions secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . (vii) Any rules relating to change's in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.

63. These required disclosures must be made in the TILA Disclosure Form with the other disclosures. The TILA Disclosure Form must state whether the loan is a negative amortizing loan and whether unpaid interest is being added to principal.

64. In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps, that the disclosure required a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 13, 1995

AGENCY: Board of Governors of the Federal Reserve System

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relation to the payment cap option, including the effects of exercising it (such as negative amortization occurs and that the principal balance will increase)…" (Found at C.F.R. 226.19)

65. At all times relevant, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary, as well as Regulation Z and TILA.

66. Defendants sold Plaintiff an ARM loan, which has a variable feature with payment caps. Defendants failed to include any reference on the TILA Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone that the loan schedule had negative amortization. Plaintiff first learned of the negative amortization feature of his loan when the notice of trustee sale was posted on his door, therein the loan balance was stated as being $ 547,223.67 negative amortization feature of the loan is not stated any where in the Note and even if Plaintiff was to exercise due diligence he would not have discovered this feature of the loan. The payment schedule makes no reference to negative amortization and makes it appear that the payments cover both principal and interest.

67. In fact, there are no place where Defendants even inferentially reference negative amortization is in the Note. However, reading of the Note will make a reasonable person believe that negative amortization is not a feature of this loan when in fact it is a

certainty. And, these loans are, in fact, designed in such a manner so as to make negative amortization a certainty to maximize profits.

68. This attempt at a disclosure did not actually serve to alert or inform Plaintiff of anything, much less clearly and conspicuously disclose that the payment schedule provided by Defendants absolutely would not pay both principle and interest, and therefore would guarantee that negative amortization was to occur on his loan Rather, Defendants made it appear that as long as the payment schedule provided by Defendants was followed, there would be no negative amortization.

69. So, even if any language is found describing negative amortization, the language is misleading and deceptive. In fact, Defendants' ARM loan was designed in such a way as to guarantee negative amortization for their fraudulent scheme to succeed. TILA demands more than a statement that the payment could be less when Defendants were well aware that the payment is less, and would always be less, than the full interest and principal.

## C.   **Defendants' Failure to Clearly and Conspicuously Disclose that Initial Interest Rate is Discounted, Violates Truth in Lending Laws**

70. As previously stated, the informed use of credit means being able to make decisions, as well as being able to plan an individual's finances. Every month consumers look at their income and budget where their funds must be paid. The biggest investment in one's life is generally that person's home. In fact, it is often referred to as "The American Dream" to own a home, but by Defendants fraud they have turned "The American Dream" into "The American nightmare".

COMPLAINT

71. Variable rate loans are based on "margin" and "index". The index is often the Prime Rate or the LIBOR exchange rate. The margin is the amount the lender charges over the rate, basically it is the lender's profit on the loan.

72. TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are. In particular, when the payment is not based on that index and margin a separate disclosure is required. Further, the disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization. The disclosure must also inform that interest rate and payment may go up and clearly and conspicuously provide the circumstances under which the rate and payment will increase.

73. The Federal Reserve Board established disclosure requirements for variable rate loans. 26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments to borrowers. If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

74. The disclosures required pursuant to 12 C.F.R § 226.19 are extremely important because Plaintiff needs this information in order to budget his money. He needs to know if his house payments are going to go up so that she can plan for it. If the change comes as a surprise, he faces a much greater possibility of defaulting on his loan and losing his home.

75. Defendants, and each of them, state only that the interest rate may increase in the future. However, any interest rate increase was in fact far more certain than this disclosure lead Plaintiff and to believe. If Defendants had given Plaintiff the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index. Thus, the increase in the interest rate on his loan was not just a possibility; it was an absolute certainty and Defendant failed and omitted this material information in their disclosures to Plaintiff.

76. Defendant disclosure statement provided that, "the interest rate may increase during the term of this transaction if the index increases." This, however, was not the only circumstance that could cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial interest rate is discounted, creating the possibility of an increase even when the index did not rise. Due to the initial discounted interest rate, the annual interest rate would increase if the index remained constant, or even if the index declined. Because Defendants' disclosure failed to provide this extremely important material information, Defendants disclosure failed to meet the clear and conspicuous standard mandated under TILA.

77. Defendants failed to disclose to Plaintiff that his rate was, with 100% certainty, going to increase, whether or not the index upon which his loan is based, changed or intentionally misleading disclosure as this fraudulent concealment would certainly guarantee the success of their Fraudulent and illegal scheme to make their ARM Mortgage Loan a winner and the American consumer the loser.

## D.   **Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in Lending Laws**

78. Defendants' provided Plaintiff with multiple, conflicting interest rates when describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one interest rate, while on the Note, Defendants set forth other, different interest rates.

79. The official staff commentary to 226 C.F.R § 17(c)(8) states: Basis of disclosures in variable-rate transactions. The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. For example, in a loan with an initial rate of 10% and a 5 percentage points rate cap, creditors should base the disclosures on the

initial rate and should not assume that this rate will increase 5 percentage points. However, in a variable-rate transaction with a seller buy down that is reflected in the credit contract, a consumer buy down, or a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclose annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term. (See the commentary to section §226.16 for a discussion of buy down, discounted, and premium transactions and the commentary to section 226,17(a)(2) for a discussion of the re-disclosure in certain residential mortgage transactions with a variable-rate feature.)

80. The reason for this requirement is clear. Consumers cannot make informed decisions when they cannot compare the cost of credit to other proposals. It is therefore incumbent upon Defendants to show the composite interest rate in effect so that the borrowers can understand exactly what they are paying for the loan.

81. A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite rate in variable rate loans that had a discounted initial rate. The loan sold to Plaintiff by Defendant is a discounted variable rate loan. Because Defendants failed to properly, clearly and conspicuously disclose a composite annual percentage rate on his loan. Defendants violated TILA and Regulation Z.

82. As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff has suffered injury an amount to be determined at time of trial.  If Defendants had not violated TILA and had instead properly disclosed the material terms of Defendants' ARM loan product, as alleged herein, Plaintiff would not have entered into the home loan agreement which is the subject of this action.  Because Defendants failed to make proper disclosures in violation of TILA, Plaintiff now seek redress in an amount and/or type as proven at time of trial.

# THIRD CASUE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et. Seq.* – "Unlawful" Business Acts or Practices Predicated on Violations of TILA.**

83. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

84. California's Unfair Competition Law ("UCL"), Business and professions Code, §17200. *et seq.*, prohibits acts of "unfair competition." Including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

85. A business act or practice is "unlawful" if it violates any other law, code or statute.

86. Defendants, and each of them, engaged in unfair competition within the meaning of §17200 by violation the TILA as detailed in Plaintiff's TILA Cause of Action. Defendants failed to comply with the disclosure requirements mandated by TILA, Regulation Z and went as far as to deliberately conceal, omit and camouflage the true terms and cost of the loan. Official Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly or accurately disclose the terms of the ARM loan to Plaintiff, as Defendants were required to do under TILA.

87. Plaintiff is a direct victim of the Defendants' unlawful conduct, as alleged herein, and has suffered injury in fact, and has lost money or property as a result of Defendants' unfair competition and advantage advanced through fraud.

**Violation of California's Unfair Competition Law, Bus. & Prof. Code 17200 et seq.,**

**"Unfair" and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

85. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

86. The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices especially involving fraud or violating vital state interest. The Plaintiff hereby seeks to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

87. California Business and Professions Code, 17200, et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

88. A business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

89. A business practice is "fraudulent" if it is one, which is likely to deceive the public

90. Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their ARM loans. Defendants, and each of them, marketed and sold Plaintiff a deceptively devised financial product. Defendants marketed and sold their ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) years and no negative amortization. Further, Defendants disguised from Plaintiff the fact that Defendants' ARM loan was designed to, and did, cause negative amortization to occur.

91. Defendants lured Plaintiff into the ARM loan with promises of low fixed interest. Once Plaintiff entered into this loan, Defendants switched the interest rate charged on the loans to a much higher rate than the one they advertised and promised to Plaintiff. After entering this loan, Plaintiff could not escape because Defendants purposefully placed into his loan, an extremely onerous prepayment penalty that made it prohibitively expensive for him to extricate himself from his loan. Thus, once on the hook, Plaintiff could not escape from Defendants loan.

92. Plaintiff was a consumer who applied for a mortgage loan through Defendants. During the loan application process, Defendants uniformly promoted, advertised, and informed Plaintiff that in accepting the loan terms, Plaintiff would be able to get low mortgage payment and save money.

93. Defendants promoted their ARM loan as having a low fixed interest rate, i.e., typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate, the purpose of which was to get Plaintiff to enter into a loan agreement with Defendants. Defendants did not disclose to Plaintiff that the "Teaser" rate was not fixed rate that Defendants would actually charge Plaintiff on his outstanding loan balances.

94. Based on the Defendants' representations and conduct, Plaintiff agreed to finance his primary residence through Defendants' ARM loan. Plaintiff was told he was being sold a home loan with, low interest rate, fixed for the first three (3) years of the loan. Plaintiff was also lead to believe that if he made payments based on this advertised interest rate, and the payment schedule provided to him by Defendants, the loan was a no negative amortization home loan. After, the fixed interest period, Plaintiff was told his rate "may" change. And, Plaintiff believed he would then be able to re-finance to another home loan. Plaintiff believed these facts to be true because that is what the Defendants wanted him to believe, that is what Defendants lead him to believe.

95. Defendants aggressively sold their product as a fixed low interest home loan. Defendants knew that if marketed in such a manner, their ARM loan product would be a hugely popular and profitable product for them. Defendants also knew, however, that

they were marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew, however, that this was not entirely true.

96. In fact, Defendants' ARM loan possessed a low, fixed payment but not a low, fixed interest rate. Unbeknownst to Plaintiff, the actual interest rate he was charged on his loan was not fixed. After purchasing Defendants' ARM loan product, Plaintiff never actually received the benefit of the low advertised interest rate, and actually received the low rate for just a single month. Immediately, thereafter, Defendants increased the interest rate they charged Plaintiff. Once Plaintiff accepted Defendants' ARM loan, he had no viable option to extricate himself because the loan agreement included a draconian prepayment penalty.

97. Defendants perpetrated a bait and switch scheme on Plaintiff, Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan, as having a fixed interest rate was deceptive and unfair. Defendants initiated this fraudulent scheme in order to maximize the amount of the loan issued to consumers and to maximize Defendants' profits.

98. Plaintiff is a direct victim of the Defendants' unlawful conduct, as herein alleged, and has suffered injury in fact, and has lost money and strands to lose his property as a result of Defendants' unfair competition.

## FOURTH CAUSE OF ACTION

## NEGLIGLENT MISREPRESENTATION

99. Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

100. Countrywide made material misrepresentations to Plaintiff which include, but are not limited to, the following.

a. Plaintiff was promised that his monthly mortgage payments would be much lower then they actually were;

b. Countrywide assured Plaintiff that he would be able to refinance the LOAN within three (3) months, when in fact this was not an option for Plaintiff due to prohibitively high, prepayment penalties.

c. Countrywide assured Plaintiff that there would be no penalties for refinancing the LOAN and

d. Countrywide assured Plaintiff that after three (3) months, Plaintiff would be able to secure a lower interest rate and thereby lower his monthly loan payments;

101.  Plaintiff received a Defective, Notice of Default, "NOD" and defective, Notice of Trustee's Sale, 'NOTS" with loan numbers that did not belong to Plaintiff's loan, Plaintiff through a letter/fax informed Defendants of the defect which defendants failed to cure and ignored and continued the foreclosure proceeding against Plaintiff,

102.  Plaintiff is informed and believes that the representations of "B of A", and Recontrust, were, false since they knew or should have known that they did not have the authority, right or standing to foreclose on the LOAN that was deficient at the origination stage.

103.  Defendants' misrepresentations made herein were intentional, and said misrepresentations were negligent. When Defendants made the representations alleged herein, they had no reasonable ground for believing them to be true.

104.  Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

105. Plaintiff, unaware of the complexities and/or defects involved in the subsequent transactions between Defendants that occurred after Plaintiff entered into the LOAN, justifiably relied on Countrywide representations that it had the authority to foreclose on the LOAN.

106. As a proximate result of the negligent misrepresentations of Defendants as herein alleged, Plaintiff sustained damages, including monetary loss, expenses, emotional distress, loss of income, loss of credit, loss of opportunities, fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be established at trial.

## FIFTH CAUSE OF ACTION

## FRAUD

107. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

108. Defendant Countrywide willfully violated Federal and State laws, for these very violation contributed to the success and popularity of their, ARM loans.

109. Plaintiff relied on Countrywide and their representation as to the terms of the loan, Plaintiff at the time relied on these representations and believed them to be true and factual.

110. Countrywide through fraudulent concealment, negligent misrepresentation, intentional misrepresentation and omission of material facts as to the terms of the Note and mortgage, which were designed to mislead plaintiff had no intention of honoring the terms of the Note and mortgage and did intentionally breach them.

111. Countryside's promises and the terms of the Note and mortgage were intended to deceive and induce Plaintiff to enter into the loan agreement.

112. The names of the corporate individuals who made, approved and ratified the fraudulent loan documents can only be ascertained after discovery is complete. The corporation can be held liable for the acts of its employees, agent and assigns, as this fraud was not the act of a renegade individual within the corporation, it was standard operations procedure, sanctioned and ratified by the highest leadership at corporation and had been standard practices for many, many years.

113. ARM loans originated by Countrywide were estimated to be held by 9 million home owners at its peak so it is not an isolated incident, in this case of Plaintiff's loan, being approved by a renegade employee.

114. Countrywide made false statement in the loan documents, concealed material facts, fraudulently concealed facts and altogether omitted facts (1) made false statements; (2) Countrywide knew their statements are untrue and knew they will not honor them; (3) The statements made and presented to plaintiff were taken to be true and correct by him ; (4) Plaintiff relied on the statements made to him; (5) The statements by Countrywide were made for the purpose of inducing Plaintiff into the loan; (6) Plaintiff's reliance on the statement made to him led to his injury.

115. Additionally, liability for common law fraud can be extended e.g. from investor to the lender, in this case the lenders accepted the fruits of the fraud via high fees, charging more interest than called for in the loan documents, negative amortization, breach of contract and prepayment penalties.....

116. As alleged herein, Defendant Countrywide misrepresented to Plaintiff that Countrywide has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant Countrywide had no legal right to collect such monies..

117. As alleged herein, Defendant MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust. Further, Defendant MERS misrepresented that it followed the applicable legal requirements to

transfer the Note and Deed of Trust to subsequent beneficiaries.

118. These material representations made by Defendants were false.

119. Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

120. Defendants intended that Plaintiff rely on these material representations.

121. Plaintiff reasonably relied on said representations.

122. As a result of Plaintiff's reliance, he was harmed and suffered damages. Plaintiff's reliance on Defendants' false material representations was a substantial factor in causing Plaintiff harm.

123. Additional evidentiary facts constituting fraud in this matter are within Defendants' knowledge and possession.

124. Defendants, and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

125. Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and done willfully, in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

126. Plaintiff is informed and believes that Defendants made various misrepresentations of material fact with respect to the LOAN, are subject to assignee liability, and induced Plaintiff to rely on said misrepresentations. These misrepresentations were representations of material fact with respect to the mortgages, the actual interest rates and other terms of the mortgages. The representations made to Plaintiff by Defendants were in fact false.

127. Plaintiff is informed and believes that all Defendants herein intended to induce Plaintiff's reliance on the facts misrepresented, and variously misinformed Plaintiff regarding the terms of the LOAN as alleged herein so that Plaintiff would enter into the financing agreements and so that they could cause Plaintiff to accept the LOAN and to continue on with the fraudulent LOAN.

128. Defendants knew or should have known that the representation made in their correspondences were in violation of RESPA. Defendants knew or should have known that the representations made by Defendants in an attempt to convince Plaintiff to take out the LOAN were false.

129. In justifiable reliance on Defendants' and each of their various misrepresentations, Plaintiff did take out a LOAN on the Subject Property, Plaintiff is burdened with a higher interest rate, Plaintiff is burdened with a mortgage that will increase the debt through the negative amortization feature of the loan, Plaintiff is now burdened with the unlawful LOAN and Plaintiff has suffered damages as a result.

130. At the time Defendants and their predecessors herein made the promises and representations to Plaintiff, Defendants and their predecessors herein had no intention of performing the promises.

131. The promises were made by Defendants and their predecessors with the intent to induce Plaintiff to take out the LOAN and take other actions so that Defendants and each of them could make their respective profits, commissions, yield spread premiums, sales quotas and gain other beneficial financial interests including but not limited to prepayment penalties, late payment penalties, surcharges and other fees.

132. Plaintiff, at the time these promises were made and at the time Plaintiff took the actions herein alleged, was ignorant of Defendants' secret intentions not to perform, ignorant of Defendants' false representations stated herein, and Plaintiff could not, in the exercise of reasonable diligence, have discovered, Defendants' secret intentions and false representations. The actual terms of the loan were concealed/misrepresented

in such a clever manner that even the exercise of due diligence, would not have revealed the actual terms of the loan, Plaintiff being an unsophisticated first time home buyer would, never have discovered the deceit perpetrated by defendants. In reliance on the promises of Defendants their predecessors, and successors, Plaintiff signed various unexplained, documents, ultimately ending up with the LOAN.

133. Defendants and their predecessors are reputable, lending instutions, doing business in California, and Plaintiff justifiably relied on their representations.

134. Plaintiff, at the time these representations were made by Defendants and their predecessors, and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of the misrepresentations and believed them to be true. In reliance on these representations, Plaintiff was induced to take out the LOAN, be burdened with fraudulent LOAN, and other actions, had Plaintiff known the actual, facts, Plaintiff would not have taken such action.

135. As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiff sustained damages, including monetary loss, emotional distress, loss of income, loss of credit, loss of opportunities, fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotion distress, mental anguish, harm, humiliation, embarrassment, and mental pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

136. The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, as well as fees and costs.

# SIXTH CAUSE OF ACTION

## Breach of Contract

137. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

138. Plaintiff entered into a written home loan agreement –the Note-with Defendants. The Note was drafted by Defendants and could not be modified by Plaintiff.  The Note describes terms and respective obligations to the parties herein.

139. The Note describes Plaintiff's interest rate on the loan as a low interest rate, typically between 1% to 3%.  In addition, as required by federal law, the Defendants provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate.  For the first three 3 years the payment schedule shows that Plaintiff's monthly payment obligations to Defendants are the exact payment necessary to pay off all principal and interest during the  terms of the loan if, indeed the interest rate actually charged by Defendant on the loan was  the low interest rate promised.

140. Defendants expressly and/or through their conduct and actions indicate that Plaintiff's monthly payment obligations will be applied to payment of both **principal** and **interest** owed on the loan.  Defendants breached this agreement and never applied any of Plaintiff's payments to principal.

141. The written payment schedules prepared by defendants, and applicable to Plaintiff's loan, show that payment amounts owed by Plaintiff to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants

did as promised, the payments would have been sufficient to pay both principal and interest amount.

142.   Instead, Defendants immediately raised Plaintiff's interest rates and applied ***no part*** of Plaintiff's payments to the principal balances on his loan.  In fact, because Defendants charged more interest than agreed to, the total payment was insufficient to cover the interest charge and principal balance increased (which is the negative amortization build into the loan).

143.   Defendants breached the written contractual agreement in the mortgage and Note since they are a contract in writing by failing to apply any portion of Plaintiff's monthly payments toward his principal loan balances.

144.   Plaintiff, on the other hand, did all of those things the contract required of him. Plaintiff made monthly ***payments*** in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

145.   As a result of Defendants' breach of agreement, Plaintiff has suffered harm.  Plaintiff has incurred additional charges to his principal loan balance.  Plaintiff has incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's principal loan balance.  Furthermore, Defendants' breached has placed Plaintiff in danger of losing his home through foreclosure, as Defendants have caused Plaintiff's principal loan balances to increase and limited his ability of make his future house payments or obtain alternative home loan financing.

## STANDING

146. When the question of standing arises in a non-judicial foreclosure, the burden of proof in on the Defendants to prove standing to foreclose. Plaintiff alleges none of the defendants or DOES Defendants have standing to foreclose on his property.

147. California Civil Code § 2924 et seq. is exhaustive and MERS as a Nominee is never included as an acceptable form of "authorized agent" in a judicial or non-judicial foreclosure.

148. The first thing the DOT dose is takes away MERS right to payment and takes away the right to enforce the Note, since MERS is not mentioned any where in the Note, it has now rights under it

149. Regardless what a borrower agrees to, in the DOT, a borrower cannot legally grant MERS the right to assign the Note or any of the rights of the Note owner.

150. MERS cannot legally assign a Promissory Note because, MERS is a Non Authorized Agent under Established and Binding California Real Estate Law and borrower can't provide the power to MERS.

151. A nominee is some one who is nominated potentially for a future position, much like being nominated for President, yet a Presidential nominee dose not receive any powers until the person actually becomes President.

152. Deed of Trust identifies MERS 'solely as a Nominee" and as the Beneficiary. Which is logically and legally impossible, because a party can only be either nominated

Beneficiary or the Beneficiary. You can't "not be" and "be" the beneficiary at the same time.

153. Any attempt to transfer the beneficial interest of the Deed of Trust without ownership of the underlying Note is void under California Law.

154. For these reasons MERS standing fails. See Assignment of the Deed of Trust Exhibit "?" incorporated herein by reference.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

A.    For actual damages according to proof;

B.    For compensatory damages as permitted by law;

C.    For consequential damages as permitted by law;

D.    For statutory damages as permitted by law;

E.    For punitive damages as permitted by law, for harassment, emotional distress, See, Young v. Bank of America 141 Cal App. 3d 108 (1983) Munger v. Moore 11 Cal App. 3d, 1 (1970) $ 500,000

F.    For equitable relief, including restitution;

G.    For an order requiring Defendants to disgorge all profits, interest, return of Plaintiffs, cost of improvements to the property as a result of their unfair competition, Fraud, unconscionable contract and willful fraudulent concealment of material facts and terms.

H.    Leave to amend in the event the court determines the amended complaint has defects and dose not fully comply with Federal pleading standards, or is poorly plead.

I.    Allow discovery.

J.    Fees and costs.

K.    Grant all other relief this court deems just and proper.

Dated this 26th, day of June, 2012

Paul Emmanuel Poutcheu
Yossa
3903 Ripley Street
Sacramento, CA, 95838

COMPLAINT

41