IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL EMMANUEL POUTCHEU YOSSA,

    Plaintiff,

vs.                                          No. CIV. S-12-0023 MCE GGH PS

COUNTRYWIDE HOME LOANS, INC., et al.,

    Defendants.                       <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Previously pending on this court's law and motion calendar for October 4, 2012, was defendants' motion to dismiss amended complaint and to expunge lis pendens, filed August 31, 2012. Plaintiff did not file an opposition but requested an extension of time in which to file one, which was denied by court order. Plaintiff was instead directed to appear at hearing prepared for oral argument. In response, plaintiff filed a motion for leave to file a second amended complaint on September 27, 2012. Plaintiff appeared at the hearing in pro se. Defendants were represented by Alison Lippa who appeared telephonically. After reviewing the papers and having heard oral argument, the court now issues the following findings and recommendations.

\\\\\

\\\\\\

BACKGROUND

By screening order of March 6, 2012, the complaint was dismissed with leave to amend as to the RESPA and TILA claims. Dismissal of the FDCPA claim was recommended and that recommendation was adopted by the district court on May 18, 2012. After an interlocutory appeal and multiple extensions of time, plaintiff filed an amended complaint on June 26, 2012.

The amended complaint alleges that plaintiff refinanced a loan on two pieces of property on May 23, 2005, but that the loan was predatory because defendants targeted plaintiff based on his status as a minority of African descent. (FAC ¶¶ 1, 2, 17.) He contends that defendants made false promises, including that his monthly payments would be much lower than they were, that he would not be penalized for refinancing, and that the interest rate would be lower than it was. (Id. at ¶¶ 18-19.) The amended complaint also alleges that defendants did not provide plaintiff with proper disclosures, including a negative amortization feature, the costs of financing, the annual percentage rate, payment obligations, type of loan, and that they charged excessive fees and prepayment penalties. (Id. at ¶¶ 18-20.) The amended complaint seeks injunctive relief and damages.

Defendants filed their motion to dismiss on August 31, 2012. Instead of filing an opposition,[1] plaintiff filed a motion for leave to file a second amended complaint.

DISCUSSION

I. Motion for Leave to File a Second Amended Complaint

Plaintiff's motion seeks to add causes of action under the Fair Housing Act, the Equal Credit Opportunity Act, and the Civil Rights Act. Plaintiff asserts that this is his first request for leave to amend. Plaintiff's motion was not, however, accompanied by a proposed amended complaint. As a litigant proceeding in forma pauperis, plaintiff's pleadings are subject

---

[1] Two days before the hearing, plaintiff filed an untimely attempt at an opposition.

to evaluation by this court pursuant to the in forma pauperis statute. See 28 U.S.C. § 1915. Since plaintiff did not submit a proposed amended complaint, the court is unable to evaluate it. Plaintiff's motion for leave to amend must therefore be denied on this basis.

Moreover, the motion to amend must be denied on substantive grounds as well[2]

> Rule 15(a) (2) of the Federal Rules of Civil Procedure states "the court should freely give leave [to amend] when justice so requires." The courts weigh the following factors when considering a Rule 15 motion: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." Sisseton–Wahpeton Sioux Tribe v. U.S., 90 F.3d 351, 355–56 (9th Cir.1996). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir.1990).

Schreiner v. Caiola, 2011 WL 219667, *3 (W.D. Wash. Jan. 24, 2011).

In this case, there is no evidence of bad faith; however, the inference can be drawn that plaintiff is needlessly delaying these proceedings, which in turn is causing prejudice to defendant. After this court issued its screening order directing plaintiff to file an amended complaint in twenty-eight days, and findings and recommendations that the FDCPA claim be dismissed on March 7, 2012, plaintiff not only received an extension of time in which to file objections to the findings and recommendations, he also sought and received additional time in which to file his amended complaint. He was permitted to file it within twenty-eight days after an order adopting or rejecting the findings and recommendations. (Dkt. nos. 4-7.)  Instead of filing an amended complaint, however, plaintiff filed an interlocutory appeal. While that appeal was pending with the Ninth Circuit Court of Appeals, Judge England adopted the findings and recommendations on May 18, 2012.  The appeal was dismissed on June 13, 2012; however, plaintiff sought and received another extension of time in which to file an amended complaint.  It was not until June 26, 2012, that plaintiff finally filed an amended complaint in a case that had

---

[2] Plaintiff's motion to amend was filed more than twenty-one days after defendants' motion to dismiss was served. Fed. R. Civ. P. 15(a)(B).

1  been opened since January 5, 2012.  After defendants filed their motion to dismiss on August 31,
2  2012, plaintiff filed a request for extension of time in which to file an opposition.  The court,
3  becoming aware of plaintiff's conduct, denied the request but permitted plaintiff to appear at oral
4  argument, despite Local Rule 230(c) which prohibits a party from being heard if an opposition
5  has not been timely filed.  (Dkt. no. 18.)  Instead of filing an opposition, plaintiff thereafter filed
6  a motion for leave to file a second amended complaint, which was not accompanied by a
7  proposed amended complaint.  On October 2, 2012, two days before the hearing, plaintiff filed an
8  untimely document entitled "notice of opposition to defend[an]ts['] notice of no opposition to
9  dismiss and defendants['] motion to dismiss complaint."  (Dkt. no. 21.)  This untimely filing has
10 not been considered.

11         Plaintiff's actions in this case smack of delay for delay's sake.  Plaintiff conceded
12 at hearing that he is living in the house which is the subject of the foreclosure rent free and has
13 not been making any mortgage payments.  Defendant indicated at hearing that plaintiff had filed
14 a bankruptcy petition which forced a stay of foreclosure proceedings in further delay of the case,
15 but it was dismissed earlier this year.  Plaintiff's filing of a lis pendens added further to the delay.
16 These delay tactics prevented defendants from defending this case, from collecting mortgage
17 payments, and from pursuing foreclosure proceedings, all to their detriment and cost, not only in
18 terms of business, but in attorneys' fees.

19         The fourth factor, futility, also counsels in favor of denying plaintiff's motion to
20 amend.  At hearing plaintiff could not say why he did not bring his proposed additional claims
21 earlier.  In any event, amendment to add claims under the Fair Housing Act, the Equal Credit
22 Opportunity Act, and the Civil Rights Act would be futile.

23         The Fair Housing Act protects against certain types of discrimination in regard to
24 the sale or rental of housing on the basis of "race, color, religion, sex, familial status, or national
25 origin."  42 U.S.C. § 3604(a) through (c).  Claims must be brought, however, within two years
26 after the alleged discriminatory practice.  Grimes v. Fremont General Corporation, 785

F.Supp.2d 269, 290 (S.D.N.Y. 2011).

Plaintiff's FHA claim would be futile as the alleged discrimination took place at the time the loan was made, in May, 2005, and he is therefore time barred.

Plaintiff is similarly time barred and could not state facts to support a claim under the Equal Credit Opportunity Act.

> The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., prohibits discrimination against an applicant for credit based on race, color, religion, national origin, sex or marital status, or age. See 15 U.S.C. § 1691(a). ECOA creates a private right of action for actual, compensatory and punitive damages, equitable relief, and recovery of costs, and provides a two-year statute of limitations from the date of the violation. Id. § 1691 e(a)-(f).
>
> To state a discrimination claim under ECOA, Plaintiffs must show that: (1) they were members of a protected class; (2) they applied for and were qualified for the loan at issue; (3) the loan was rejected despite Plaintiffs' qualifications; and (4) a creditor continued to approve loans for similarly situated applicants or treated members not in the protected class more favorably. See Shiplet v. Veneman, 620 F.Supp.2d 1203, 1232 (D.Mont.2009).

Das v. WMC Mortg. Corp., 831 F.Supp.2d 1147, 1160 (N.D. Cal. 2011).

According to the complaint and FAC, plaintiff obviously did obtain credit in the form of a mortgage loan in 2005. Aside from that mortgage, plaintiff has not alleged that he applied for credit with any defendant, that he qualified for credit from any defendant, and that any defendant denied him credit. Furthermore, any such facts would have to have occurred within two years of filing the complaint.

A claim under the Civil Rights Act would also be futile. To succeed on a damages claim under 42 U.S.C. § 1983, a plaintiff must demonstrate not only the deprivation of a right secured by the Constitution or laws of the United States, but that defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988). A § 1983 claim can lie against a private party only when "he is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183 (1980). In this case, there are no defendants who are state actors, and plaintiff has not alleged that any defendants acted in

conjunction with the state or its agents.

Finally, the fifth factor militates against amendment as plaintiff previously amended his complaint, and could have brought any of these new claims at that time.  The facts available to him for the RESPA and TILA claims were the same facts he could have alleged for the FHA claim.

II. Motion to Dismiss

    A.  RESPA

12 U.S.C. § 2605(e)(1) of the RESPA requires the servicer to provide information relating to the servicing of the loan upon a qualified written request ("QWR") by the borrower. Plaintiff asserts that he made a QWR to all defendants on December 28, 2010, and that defendants did not respond.  (FAC ¶ 7.)  Plaintiff further alleges that he made a QWR to Countrywide and B of A but they failed to respond.  (Id. at ¶ 44.)  This first cause of action, however, states that this claim is against "all defendants."  (Id. at ¶ 42.)

As stated in the March 7, 2012 order, both the complaint and the amended complaint are confusing as to which defendants the RESPA claim applies.  RESPA is only available against servicers.  The order directed plaintiff to specify on amendment which defendants were subject to the RESPA claim.  Plaintiff was advised that all such defendants must be servicers within the meaning of 12 U.S.C. § 2605, or they would be dismissed.

The amended complaint alleges:

> Plaintiff is not certain at this time exactly which of Defendants was actually the servicer of the Loan at any given time.  However, due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiff regarding the roles, and, identities, of the various entities that were purportedly handling his Loan at any given time, these allegations are made as to all Defendants.

(FAC ¶ 42.)

Because plaintiff cannot allege that any defendants are servicers, this claim should be dismissed.  Plaintiff has been on notice since this court's first screening order, filed March 7,

2012, that he would have to specify which defendants are servicers within the meaning of RESPA, or they would be dismissed. (Dkt. no. 3 at 5:8-10.) Although at hearing plaintiff indicated he was confused as to whether Countrywide or B of A were servicers, he has had almost seven months to discover whether any of the defendants are servicers. Such time is sufficient to conduct this type of investigation. See In re Conseco Life Trend Ins. Marketing and Sales Practice Litigation, 2012 WL 243271, *2 (N.D. Cal. Jan. 25, 2012) (two to three months sufficient to discover whether one company was the alter ego of another company). It is manifestly unfair at this stage of the proceedings to keep a ten month old case open merely to permit plaintiff discovery on which, if any, of the named defendants are servicers. This claim should therefore be dismissed.

B. TILA[3]

TILA provides that a plaintiff can bring an action to recover damages "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The loan was consummated on or about May 23, 2005. (FAC ¶ 17.) This action was filed on January 5, 2012, more than five years after consummation of the loan; accordingly, plaintiff's TILA claim is time-barred. By previous order, plaintiff was permitted to amend his TILA claim to set forth a basis for equitable tolling.

TILA violations include the failure to provide the required disclosures pursuant to 15 U.S.C. § 1631 and the failure to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to 15 U.S.C. § 1632. To recover damages arising from alleged TILA violations, a plaintiff must file an action to recover damages "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). However, in certain circumstances, equitable tolling of civil damages claims brought under TILA might be appropriate. See King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986). The

---

[3] In the previous order, the court recommended that the rescission claim under TILA be dismissed as it was time barred and equitable tolling did not apply. (Dkt. no. 3 at 3.)

doctrine of equitable tolling may be appropriate when the imposition of the statute of limitations would be unjust or would frustrate TILA's purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to ... avoid the uninformed use of credit." Id. (quoting 15 U.S.C. § 1601(a)).

The Amended Complaint does not specifically seek equitable tolling, but states:

> Defendants failed to include any reference on the TILA Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone that the loan schedule had negative amortization. Plaintiff first learned of the negative amortization feature of his loan when the notice of trustee sale was posted on his door, therein the loan balance was stated as being $547,223.67[. Negative amortization feature of the loan is not stated any where in the Note and even if Plaintiff was to exercise due diligence he would not have discovered this feature of the loan. The payment schedule makes no reference to negative amortization and makes it appear that the payments cover both principal and interest.

(FAC ¶ 66.)

> Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim. See Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.

Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).

Plaintiff does not allege that he actually did exercise due diligence.[4] He has failed to plead sufficient facts to demonstrate that he could not have discovered the alleged violations by exercising due diligence. Since the focus is not on defendant's wrongful conduct but rather on plaintiff's excusable delay, the amended complaint is not sufficiently pled. Although plaintiff

---

[4] Plaintiff also does not provide the date that the notice of trustee sale was posted on his door, although the amended complaint does allege that the notice of default was recorded on February 9, 2011. (FAC ¶ 12.)

alleges he discovered the negative amortization only when he received notice of the trustee sale, the amended complaint states elsewhere that "[s]omewhere in the Note, Defendants state that the promised low interest rate is the rate until the 'change date.' A description of the change date is found somewhere else in the Note." (FAC ¶ 56.) Plaintiff does not explain his lack of diligence in investigating this discrepancy when he first received the loan documents which he had signed. See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) ("nothing prevented [plaintiff] from comparing the loan contract, [defendant]'s initial disclosures, and TILA's statutory and regulatory requirements.") "[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations." Garcia v. Wachovia Mortg. Corp., 676 F.Supp.2d 895, 906 (C.D. Cal. 2009), *citing* Hubbard, 91 F.3d at 79. The one year statute of limitations would be meaningless if tolling were permitted whenever improper disclosures took place. Id.

This is not a case where, for example, plaintiff was unable to read the loan documents he signed. See Galindo v. Financo Financial, Inc., 2008 WL 4452344 (N.D. Cal. Oct. 3, 2008). It is also not an excuse that plaintiff may have been an unsophisticated consumer who relied on defendants' representations, since the TILA statute, by its very nature, protects unsophisticated borrowers. Guinto v. Wells Fargo Bank, 2011 WL 2618893, *6 n. 20 (E.D. Cal. June 30, 2011).

Therefore, plaintiff's TILA claim should be dismissed as barred by the statute of limitations.

C. State Law Claims

As there are no federal claims remaining, this court declines to exercise supplemental jurisdiction over plaintiff's possible state law claims. See 28 U.S.C. § 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim ...if – the district court has dismissed all claims over which it has original jurisdiction"); see also, Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-1001 (9th Cir. 1997) (" 'in the usual case in which

all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims' "), quoting <u>Carnegie-Mellon University. v. Cohill</u>, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 619, n. 7 (1988).

  D. <u>Lis Pendens</u>

    Plaintiff filed a lis pendens which is attached to the original complaint. (Dkt. no. 1-1.) Based on the aforementioned findings, plaintiff has failed to establish any "probable validity" to his real property claims. Plaintiff's notice of pendency of action (lis pendens) should therefore be expunged. <u>See</u> Cal. Code Civ. Proc. §§ 405.31, 405.32.

CONCLUSION

    For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

    1. Defendants' motion to dismiss, filed August 31, 2012, (dkt. no. 16), be granted,

     a. Plaintiff's federal claims be dismissed with prejudice, the court decline to exercise supplemental jurisdiction over plaintiff's state law claims which should be dismissed without prejudice to their timely filing in state court,

     b. Plaintiff's notice of pendency of action (lis pendens), filed January 5, 2012, (dkt. no. 1-1), be expunged;

    2. Plaintiff's motion for leave to file amended complaint, filed September 27, 2012, (dkt. no. 20), be denied; and

    3. The Clerk of the Court be directed to close this case.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 10, 2012

/s/ Gregory G. Hollows<br>
UNITED STATES MAGISTRATE JUDGE

GGH:076/Yossa0023.fr.wpd